There was no error in the judgment of the Court below in refusing to order the Receiver to turn the property over to the complainant on the statement of facts disclosed by the record.

Let the judgment of the Court below be affirmed.

---

554    *AUGUSTUS C. FELTON, plaintiff in error, v. HOWARD
       HILL and WIFE, et al., defendants in error.

(Atlanta, January Term, 1871.)

[This case came up again in 47 Ga. 455.]

1. WILLS—CONSTRUCTION—CODICIL—CASE AT BAR.—F. by the first item of his will, bequeathed a life-estate in certain lands to his son, and subsequently, by a codicil thereto, withdrew said property from the provisions of his will, and divided it equally and absolutely among his children, and the property given to his son by the codicil is given absolutely without any referential or substitutional words carrying it back under the provisions of the first item of the will, but the devise of the codicil is complete and separate, and the terms used plain and unambiguous:

*Held,* That the son took an absolute estate in said property under the codicil, and that the law inhibits the construction of lesses estates, where no words of limitation are used by the testator and where no such intent appears, by clear and necessary words in the instrument.

2. SAME—SAME—INTENTION OF TESTATOR.*—In the construction of wills the mode of ascertaining the testator's intent, is not by arbitrary conjectures or opinions as to what he meant, but it is to be drawn from the whole instrument, under rules of law.

3. SAME—SAME—SAME.—Where the testator, by the third item of his will, gave all his property, not otherwise disposed of, to his children, to be equally divided between them, and, in the concluding paragraph, imposed the same restrictions and regulations contained

---

*WILLS—CONSTRUCTION—INTENTION OF TESTATOR.— The intention of the testator must be gathered from the whole will. Edmondson v. Dyson, 2 Ga. 312; Benton v. Patterson, 8 Ga. 151; Cook v. Weaver, 12 Ga. 47; Robert v. West, 15 Ga. 123 (4); Felton v. Hill, 41 Ga. 554 (2); Tennille v. Phelps, 49 Ga. 540; Olmstead v. Dunn, 72 Ga. 850; Gaboury v. McGovern, 74 Ga. 140; Sumpter v. Carter, 115 Ga. 896, 42 S. E. Rep. 324; Bailey v. Ross, 66 Ga. 366.

The intention of the testator must govern the construction of his will, if legal; and this intention may be conclusively shown by the unambiguous words of his will. If the intention, thus shown, is illegal, it must yield to the rules of law. Civil Code, § 3324; Choice v. Marshall, 1 Ga. 102-104; Carlton v. Price, 10 Ga. 497; Robert v. West, 15 Ga. 123, 141; Cook v. Walker, 15 Ga. 465; Smith v. Dunwoody, 19 Ga. 259; Carroll v. Carroll, 25 Ga. 260; Felton v. Hill, 41 Ga. 569; Gillespie v. Schuman, 62 Ga. 253. As Judge Lumpkin aptly said in Smith v. Dunwoody, 19 Ga. 259: "So long as a testator does not infringe the rules of law, he has the right to say, with Staberius, when he imposed an unpalatable condition in his will. Sive ego prave seu recte, hoc volui. But if he proposes doing an illegal act—as creating a perpetuity, or uses words to create one estate, when he designs another; in these and innumerable other cases which might be cited, his intentions will be defeated. How frequently are courts obliged to say, in the construction of wills, in conflicts between intention and technical rules and expressions, voluit sed non discit." Hertz v. Abrahams, 110 Ga. 708, 36 S. E. Rep. 409.

in the first item, and the first item bequeathed a life-estate and also contained restrictions and regulations for the protection of each life estate:

*Held,* That neither by the language used, nor by a legal interpretation of the testator's intent, will the property, thus given absolutely, be reduced to a life-estate. The testator has not so declared, and the restriction and regulation imposed cannot be held to diminish the fee. The protection of the law invoked for the preservation of the estate given is consistent with such estate, and Courts will not supply words to support a construction of intention to give a lesser estate, where the words employed in making such bequest are without limitation.

4. SAME—SAME—SAME—DESCENT AND DISTRIBUTION. —Upon the death of the two minors, who took under the above item of the will, their brother of the half-blood, took, as heir-at-law, the share he was entitled to in their several estates, and his daughter now takes, as the heir-at-law of her father, whatever he would have been entitled to in the premises.

5. SAME—SAME—SAME.—In the property withdrawn from the first item of the will and disposed of under the second item of the codicil, the children of Shadrach R. Felton, all took an absolute estate; and the imposition of a trustee, under the third item of the codicil, did not diminish such estate, but was within the intention of the testator, the better to secure it for their enjoyment; and that one of said children being of age did not defeat the purpose of such trust; and in such estate, if not imposed of during the lifetime of John Micajah, his daughter was entitled to his share therein, as his heir-at-law at his death.

*6. SAME—SAME—ARBITRATION AND AWARD—INFANTS.—In the view of construction which we give this will, the submission to arbitration in this case was not such a submission of the interests of the daughter, she being an infant, and without guardian or trustee, as estops her assertion of her rights as heir-at-law, the Statute of Limitations not in fact having application to her claim and rights in the premises.

Construction of Wills. Practice. Before Judge Clark, Macon Superior Court. December Term, 1870.

Augustus Cicero Felton, a minor, by his guardian, brought his bill of complaint, against Howard Hill and his wife, Carrie E. Hill, Joel B. Griffin, Clerk of the Superior Court, John M. Greer, his deputy, John L. Parker, Ordinary, Joshua Theus, and his wife Lavinia, and Elizabeth Felton, all of said county of Macon, averring as follows: Shadrach R. Felton, late of said county, died on or about the ——— day of April, 1852, testate, and leaving as his legatees, his widow, the said Lavinia, John Micajah Felton, and the following minor children, to-wit: William Noah Felton, complainant, and Jane Elizabeth Felton. Said will and codicil were afterwards to-wit: at the May Term, 1822, of the Inferior Court of said Macon county, sitting for ordinary purposes, duly presented by Cicero H. Young and John M. Felton, the executors therein named, for probate and record, and was then and there duly proven and admitted to record; and the executors qualified. Said executors assented to the legacies contained in his will, and paid out and turned over the same to the legatees therein named. Cicero H. Young as the trustee and testamentary guardian of complainant and his minor brother and sister, received their legacies respectively

in his character of testamentary guardian and trustee, and as such accounted to and with the proper authorities therefor. John Micajah Felton, by himself and one Ezekiel H. Adams, acting as trustee for the legacies to him bequeathed, received the same and gave acquittances therefor, and the bequests to the said Lavinia were paid to her. Said several legacies were turned over as long ago as the year 1854. John Micajah Felton, although he qualified as executor, acted but very little in said trust, and most of the burthen of administering said testator's estate devolved upon said Young.

\*Young departed this life intestate on ———— 1862, and John Micajah Felton also died intestate in the year 1867. There has been no representation upon his estate, and there is no likelihood of there being any. Said executors, previous to the death of said John Micajah, had fully administered the estate of said testator, Shadrach R., and had paid both his debts and legacies, and left nothing to administer under the law, or under his said will. But notwithstanding this full administration of said testator's estate, John L. Parker, Ordinary of said county of Macon, has caused a citation to issue, calling upon parties at interest to show cause why administration, de bonis non, with the will annexed, of said Shadrach R. Felton, should not be conferred upon the Clerk of the Superior Court of Macon county, or some other discreet person, for the reason that said estate, as is therein alleged, has not been fully administered by said deceased executors. Parker has been induced to issue said citation by the defendants, Hill and his said wife, Carrie E., solely for the benefit of the said Carrie E., who is the sole surviving child of the said John Micajah, and who claims as such to be a legatee under the will of her said grandfather, the said Shadrach R. Said will was made on the 17th of November, 1851, and is as follows:

"In order to dispose of my property in such manner as I consider fair and just among those dear to me by family ties, I, Shadrack R. Felton, do make, ordain and publish this my last will and testament, with the following provisions, that is to say:

"1st. I give and bequeath to my oldest son, John Micajah Felton, for and during the term of his natural life, five certain negro slaves, to-wit: Anthony, a man aged about twenty-five years, and his wife, Jane, about the same age. Frank, a fellow aged about twenty years, Enoch, a boy aged about sixteen years, and Green, a boy aged about fifteen years, and also the use and occupation of the land I purchased from the estate of the late John Rushin, deceased, which said lands lie in the fifteenth district of originally Houston, now Macon county, and amounts to nine hundred acres, more or less, \*excepting the grounds on which Montezuma now stands, and the right of way heretofore granted to the Southwestern Railroad Company.

"It is my particular desire, and I hereby direct, that the

property bequeathed as above, with its natural increase, shall pass to and become vested in the child or children which my said son, John Micajah, without issue, then all of said property shall be equally divided among my other children then living, share and share alike. Should any of my children then be dead leaving issue, then the share of the parent shall pass to my grand-children or grand-child then representing said deceased parent.

"And I furthermore declare, that the control and possession which I hereby give to my son, John Micajah, of the property aforesaid, shall amount to nothing more than a lifetime estate in the same, and that said property shall not be liable for the debts of my said son, John Micajah, nor shall he part with the title of the same, so as to deprive my grandchild or grand-children which he may leave at his death, of the benefit of said property, or any portion thereof, or in default of such issue, no act or liability of his shall deprive my other children, or their heirs, of the absolute right to said property. My sole object in making this restriction is to secure to my grand-children, that may come after me, a substantial token of my love. Should the said John Micajah attempt to sell said, or become so invoked that the same would likely be seized for his debts, I direct that the proper Court having jurisdiction shall appoint a prochien ami, or next friend, to protect the rights of the remaindermen in the premises, in such way as shall be just and equitable. By nothing herein stated am I to be understood as doubting the prudence or integrity of my said son, John Micajah Felton.

"2d. To my beloved wife, Lavinia Felton, I give and bequeath the tract or lot of land on which I now reside, containing two hundred two and a half acres, more or less, with all the appurtenances thereon, during her natural life or widowhood. Should she marry after my death, it is hoped that a good home will be provided for her by my successor. *In the event of her second marriage, the said lot of land is to be equally divided in value among all my children by my said wife.

"3d. After the payment of my just and lawful debts, if any should exist at my death, the balance of my property, consisting of lands, slaves, plantation stock, choses in action and all other thing whatsoever, is to be divided equally among my children, that is to say, William Noah Felton, Augustus C. Felton and Jane Elizabeth Felton, and such other child or children hereafter to be born, which I may have at the time of my death, or which may be born of my said wife within the usual period of gestation thereafter, share and share alike. If the lands can be divided fairly among my said children, I desire that a partition may take place, but if the executors or a majority of the legatees should prefer to divide otherwise, then a valuation is to take place and the proper sums awarded.

"To guard against imprudence or misfortune on the part of all my children, I hereby impose on each of them and the property herein bequeathed to, them respectively, the same restrictions and regulations hereinbefore applied to my son, John Micajah, and the interest he may take under this will.

"4th. In all my property, except my lands, my wife Lavinia is to receive a child's part and no more; nothing herein being is to interfere with the right to the possession of the lot of land on which I reside, as hereinbefore provided.

"5th. Such sums of money as I have advanced or may advance to my son, John Micajah, he is to refund to my estate and the same is to be equally divided among all my children, allowing. a child's part to my said wife.

"6th. The proceeds of the lands now laid out for the town of Montezuma, are to be equally divided among all my children, and they are to have a vested and equal interest in said land or town site.

"7th. I appoint John Micajah Felton and Cicero H. Young executors to this my last will and testament, and request the Inferior Court, when sitting for ordinary purposes for Macon county, to appoint a suitable person. administrator, *with the will annexed, to carry out the foregoing provisions, should the above named executors decline qualifying or resign. Hereby revoking any will, and all wills by me at any time heretofore made, I declare this to be my only last will and testament, containing a true disposition of my property and effects."

Codicil of 15th of April, 1852.

"1st. In the first clause of my said will, I gave and bequeathed to my son, John Micajah Felton, a life-estate in certain property therein mentioned. Now I revoke so much of said clause as relates to the lands therein specified, and hereby give and bequeath to my said son, John Micajah, all my claim, title and interest to and in the town of Montezuma, and the parcel of land connected therewith, consisting of twenty acres, more or less, which I jointly hold with John T. Brown; and my said son, John Micajah, is to have no portion of any lands, except the said Montezuma property, to the extent, as aforesaid. And further, my said son, John Micajah, is to pay to my executors all the money or sums that I have advanced to him, or paid on his account, or may hereafter advance or pay on his account, except one share thereof, equal to a share, counting my said wife, Lavinia, and all my children, each as a share holder, which one said share he is permitted to retain for his own use, and no more.

"2d. All my lands then withdrawn from the provisions of the said first clause of my said will, are to be sold by my executors, and the proceeds thereof to be equally divided among all my children, share and share alike, including John Micajah.

"3d. I hereby constitute and appoint Cicero H. Young a trustee for all my children, sons and daughters, and vest in

him the legal estate in all the property specified in said will, set apart for them respectively for their own separate use and benefit. And I hereby authorize and require said trustee and his successor or successors to keep the property of each of my children from waste, and to preserve the same, from * . * * in hands or in such form as he may deem best for their interest *and happiness, allowing to my said children the free use and profits of said property, but not the right to sell or dispose of the same without the consent in writing of my said trustee or his successors."

It is claimed by Hill and wife that the legacy in this 2d item of said codicil to the said John Micajah is incumbered with and subject to the same trusts, restrictions and limitations as the devise in said 1st item of said will of said testator; that said John Micajah had only a life-estate in said legacy, and that the remainder therein at the death of said John Micajah, vested in and become the property of said Carrie E., the daughter of said John Micajah; that a trustee was appointed by said testator in the 3d item of said codicil, to preserve said remainder for the use of said Carrie E., and that said executors have never administered this portion of said testator's estate, by making sale of said lands and dividing the proceeds among the persons entitled under said 2d item in said codicil, and that to this extent, and this extent only, is said testator's estate unadministered; and that they desire said administrator, de bonis non, with the will annexed, of said Shadrach R. Felton, solely to enable said Carrie E. to set up and successfully prosecute her rights in and to the said land. Complainant submits, however, that the legacy to said John Micajah, in and by the 2d item of said codicil, was and is absolute and unconditional, incumbered with no trust whatever, and subject to no limitations and restrictions; that there is no remainder given over to the said Carrie E., or any other person; and he says that the said John Micajah Felton, in his lifetime, sold and disposed of his entire interest in said legacy to Cicero H. Young, as the trustee and guardian of complainant, and the said William Noah Felton; that said Cicero H. paid to said John Micajah, out of the proceeds of the property of complainant and the said William Noah, previous to the death of the said William Noah, for said legacy, the sum of $1,666 60 and took his receipt therefor, dated December 24th. 1853, and that ever since that time the said Cicero H., as trustee and guardian, held said *land adversely to said John M.

After the death of Cicero H. Young, to-wit: On the 17th day of September, 1863, Ellis R. Young, the administrator of said Cicero H., delivered said receipt to said John M., who promised to return the same when called for, but who, in his lifetime, never did so, and said receipt, if still in existence, is doubtless among the papers of said John M.,

and subject to the control of said defendants, Howard and Carrie E. Hill and Elizabeth. Executors advertised said land for sale in the Southwest Georgian, on the 21st July, 1852, and stated therein, if not previously disposed of, said land would be sold in the town of Montezuma, at public auction on the first Tuesday (2d day) of November of that year. Said sale did not come off at said appointed time, but was had at a subsequent period, to which it was regularly postponed; said land was sold, in fact, to one Jefferson R. Westberry, who was the highest and best bidder therefor at said sale; but whether said Westberry ever secured a conveyance therefor, complainant cannot say, as the said Westberry, together with the other parties to the transaction, is now dead; though he does not believe that he ever did, as he has certain information that, after said sale, the said bid was transferred by the said Westberry to said Cicero H. Young, as the guardian and trustee of complainant and his said brother William Noah, and that said Cicero H., returned his actings and doings in that behalf to the proper Court, and obtained its sanction. Said return was destroyed at the burning of the Court-house of Macon county, in the Spring of 1857, but said Cicero H., as such trustee, had the ratification of said John Micajah to said transaction, and settled with him for his interest therein, as is shown by the said receipt for $1,666 60 above referred to, as also by copies of two deeds from John Micajah Felton and his trustee Ezekial H. Adams to Cicero H. Young, trustee and guardian, as aforesaid exhibited, each bearing date, December 24th, 1853, and by which the entire interest of the said John M., both in his own right, and in right of his deceased sister in and to said land, in said 2d item of said codicil, is conveyed, and also all the interest of said John M., of every kind whatsoever, *in and to the estate of his said deceased sister, Jane Elizabeth. After the death of said Cicero H. Young, to-wit: on the 14th day of September, 1863, his actings and doings, touching the administration of the estate of the said Shadrach R. Felton, and his guardian and trusteeship under said will, and the rights and interests of each of the legatees under the will of said Shadrach R. Felton, were submitted by Ellis R. Young, administrator of said Cicero H. Young, deceased, together with the other parties in interest, to the arbitrament and award of Benjamin Harris and David L. Wicker, who selected John M. Greer as an umpire, and the said arbitrators and umpire, on the 17th day of September, 1863, rendered their award, settling the accounts of said Cicero H. Young, as such executor, and also the rights and interests of the respective legatees under said will, which award was duly returned to and made the judgment of the Superior Court of said county of Macon, at the September Adjourned Term thereof, in the year last aforesaid.

This is as a complete bar to said application for letters of administration or any contemplated proceedings, founded upon the grant of the said administration by the said defendants or any of them. All the property bequeathed by the will to the said John Micajah, in which the said defendant, Carrie E., had any interest, or which was incumbered with any trust, or subject to limitations and restrictions, consisted of slaves, which were manumitted in the lifetime of said John Micajah. Any other legacy or right which said John Micajah had under said will has been settled for, and his chosen trustee has receipted for the same. Jane Elizabeth Felton died in 1852, and William Noah Felton on or about the 15th day of September, 1862; they were both under age and left no child or other descendant, and died intestate, and the interests of said John Micajah and others in the estate of each of them is disposed of and settled by said award, the deed and receipt given by said John M. to Cicero H., as guardian, for $1,203 00, dated about the 1st day of February, 1854. Said receipt was given for said John Micajah's interest in the negroes belonging to said Jane Elizabeth, as he has been informed and believes.

*Said award, so far as said John Micajah's interest or the interest of the other defendants thereunder is concerned, has been fully performed, and a division in kind being impracticable under said award, the said John Micajah, on the 27th day of February, 1864, sold and conveyed to Sidney S. Hathaway, then the guardian and trustee of complainant, all the interest he then had in the estates of said Jane Elizabeth and William Noah. Elizabeth Felton and Carrie E. Hill, are and were the only heirs at law of said John Micajah. Cicero H. Young resigned the trust, so far as respected the legacies to said John Micajah and his offspring, some time in the year 1852; his resignation was accepted, and Ezekiel H. Adams was appointed in his place, and continued to act in said trust up to the period of his death, which occurred some time in the year 1861, and afterwards, William H. Felton was appointed the successor of said Adams in said trusts, and represented said trust in the arbitrament and award. He pleads the Statute of Limitations against the grant of said administration, de bonis non, and any litigation consequent thereon, or the disturbance of his rights under the will of the said Shadrach R.

The prayer was that the Ordinary be restrained from granting letters of administration to the Clerk of the Superior Court; that all suits touching these matters be restrained, and that the rights of the respective parties be fully fixed in the decree in this cause. Answer was waived. So much of the answers as is necessary to show the issues was as follows:

Howard Hill and his wife, Carrie, denied that John M. Felton assented to Adams' receiving said legacy as his trustee. They said that at the time of sale, in December 1853,

and at the arbitration in 1863, Carrie was a minor, knowing nothing of her interests under the will, and nothing of said sale; on the 13th of December, 1866, she married Hill; her father died in February, 1867, when she was but fourteen years old. They said that said sales were illegal, and prayed that they be set aside. They contended that under the will John Micajah took only a life-estate in the property, (except *his share of his indebtedness to testator) with remainder to said Carrie.

By way of cross-bill, they answered that upon the death of Jane Elizabeth, Carrie was entitled to one-third of her estate, and upon the death of William Noah, she was entitled to one-half of his estate; if John Micajah took under the will any interest in these dead minors' estate, it was but a life-estate. They said that when the will was made John Micajah was greatly in debt, insolvent, improvident, wasteful and prodigal, in fact, at times greatly dissipated, and therefore Shadrach L. made said will as he did, intending to give him but a life-estate. They said that said pretended sale by John Micajah was fraudulent; that the arbitration was solely as to John Micajah's indebtedness to testator and his interest in the estates of Jane Elizabeth and William Noah, and that this award was by a mistake as to what was John Micajah's estate under said will, is contrary to law and equity, and, at any rate, does not bind Carrie, who was a minor, and not represented therein. And they prayed that the complainant should not settle with his award, then near his majority, till these matters were adjusted.

Augustus C. having attained his majority, demurred to said cross-bill for want of equity, and answered it, but the answer is not material here.

Argument being heard, the said presiding Judge decreed, among other things:

First. That John Micajah Felton took only a life-estate in the property bequeathed in and by the first item of the will of Shadrach R. Felton, deceased, with remainder to such child or children as said John Micajah left, him surviving, at his death, and that the provisions and limitations above specified extend to the bequests made to said John Micajah in the first and second items in the codicil to said will; and that defendant, Carrie E. Hill, being the surviving child of said John Micajah Felton, is entitled to the remainder in all said bequests in which said John Micajah had a life-estate by the terms of said will and codicil.

Second. That as to the estate which passed under the said *will to Jane Elizabeth Felton and William Noah Felton, each of whom died in the lifetime of John Micajah Felton, the said John Micajah Felton took, in

each of said estates, an absolute fee simple title in remainder, unincumbered with any trust or condition whatsoever, and the said John Micajah Felton, in his lifetime, having disposed of said interest by and to the trustees of complainant, Augustus Cicero Felton, both in the lands conveyed by the third item in testator's will and in the second item of the codicil, that a life-estate in the one-fourth part of said lands so devised as last aforesaid, with remainder to such child or children as the said Augustus Cicero may leave, him surviving, and in default of such child or children, then over to the issue of any deceased brother or sister of the said Augustus Cicero Felton, be decreed to him the said Augustus Cicero Felton, and that the said Augustus Cicero Felton shall take in fee simple the remainder, to which he was entitled at the death of his brother and sister, the said William Noah and Jane Elizabeth, and also the remainder to which said John Micajah Felton was entitled in the said estate bequeathed as aforesaid to the said William Noah and Jane Elizabeth respectively, the same thing having been purchased from said John Micajah for said Augustus Cicero by his trustees; and that the said Carrie E. have and recover of the complainant the bequests in said items of said will and codicil contained, which were bequeathed to John Micajah for life, the same being one-fourth part of said lands, which are to be partitioned and divided between the said Augustus Cicero and Carrie E. in the proportions above mentioned; or in the event that the said partition is impracticable, then said lands are to be sold for a division.

Third. That the bar of the Statute of Limitations and lapse of time and of the judgment and award set up, do not attach to the estate of the said Carrie E., and that the same be disallowed and overruled, and that defendants recover costs.

To which said decree both complainants and defendants excepted. Complainant says that said Court committed error.

First. In holding and decreeing that the restrictions, limitations and conditions of the bequest to John Micajah Felton contained in the first item of the will of Shadrach R. Felton, deceased, extended to the bequests contained in the first and second items of the codicil of the said testator's bill.

Second. In holding and decreeing that the said John Micajah Felton took an interest in any of the property bequeathed to Jane Elizabeth Felton, William Noah Felton and Augustus Cicero Felton, and by the third item of testator's will and the second item of the codicil thereto, and in decreeing to the said defendant, Carrie E.. a fourth interest in the lands in and by said items of said will and codicil bequeathed, etc.

Third. In overruling and disallowing the bar of the Statute of Limitations and of the award and judgment pleaded

and set up by the complainant, and in decreeing cost against the complainant.

And the said defendants say that said Court erred in decreeing that said John Micajah Felton took a fee simple in remainder in the property bequeathed to the said William Noah and Jane Elizabeth Felton for life respectively, for that the said John Micajah took only a life-estate in said remainder, with remainder in fee to each child or children as he might leave him surviving.

(This record was delivered in the Express office, but upon showing that it was sent in time, it was entered upon the docket, though it arrived after return day for this Term. It was stated to the Court, that various actions of ejectment dependent upon the construction of said will, and it was asked that counsel in them might appear in this cause and that extra time be given for argument. Leave was granted, with three hours extra time.)

Poe, Hall & Poe, F. S. Snead, Nesbits & Jackson, W. A. Hawkins, for Augustus C. Felton. The fee passed to the surviving brothers and sisters when the others died. The law favors the vesting of remainders: R. Code, sec. 2243. Grand-children not held included by "children" unless such intention appear in will: 25th Ga. R., 549. Mrs. Hill takes only by substitution for her father, if he was dead when the remainders vested: 11 E. L. & Eq. R., 216; 23d, 165; 21st, 18 and 21. John Micajah took a fee under the first and second items of the codicil, without the restrictions and limitations of the will: Cobb's N. D., 169; Code, sec. 2222; 15th Ga. R., 561, 563; 9th East., 267; 12 E. L. & Eq. R., 303. Words may defeat intention, but if plain and practicable, the words must control: 18th Ves. R., 368, 573; S. C. 2 Merivale R., 25; 9th Ves. R., 205; 2 Roper on L., 1461, 1470, 1471, 1463, 1467, 1469; 3 Ves. R., 302, 317, 419; 5th, 578; 1 Green & Stu., 517: 1 Ves. & B., 389; 9 Simons, 515; 2 Call. R., 354; 1 Wms. on Ex., 8 and notes. As to restraints upon use of property by one sui juris: Lewin on Trusts, 131 et seq.; 10 E. L. & Eq. R., 64; Acts 1863-4, page 47; R. Code, sec. 2280. The words "said will" must not apply to the codicil: Ward on Leg., 198; 2 Ves., 242; Bell's Supp., 333; 1 Merivale R., 23, 719; Jarman on W., 156. The codicil makes the life-estate in the will a fee: 23 E. L. & Eq. R., 4. Carrie E. had a trustee, and, therefore, is barred: Lewin on Trusts, 719, 722; 3 Kelly, 256. The exceptions as stated in 27th Ga. R., 159; Acts of 1856, secs. 19, 20, page 235, and R. Code, secs. 2875, 2876 do not apply when infants have guardians: Code, sec. 2873. Felton represented Carrie E.'s trust estate in the arbitration. The trustee is bound to protect trust estate: Lewin on Trusts, 18, 269, 681; R. Code, secs. 2833, 4166; Acts 1855-6, page 222. As to carrying out whole scheme of the will: R. Code, secs. 2360, 2369, 2634, 2435, et seq.

William H. Robenson; Phil. Cook; Lyon, DeGraffenreid & Irvin; Thomas Loyd, contra. Intention should control: 12th Ga. R., 47. As to codicil: 1 Red., secs. 12, 13, 351-2, 359-60. The codicil is part of the will: R. Code, sec. 2369. As to one legacy substituted for another: 2 Wms. on Ex., 1112; 1 Ves. Jr., 279; 2d, 450, 6 Mod. R., 31; 2 Bland 306. The power of disposal in codicil does *not enlarge life-estate in will: 18th Ga. R., 457. Carrie E. being minor, not bound by award: Jones v. Park, last term.

LOCHRANE, C. J.

The legal questions presented by the record in this case, arise under the construction of the will of Shadrach Felton, deceased, and we will present briefly the judgment of the Court in the premises.

1. It is clear to our mind that under the first item of the will John Micajah Felton took a life-estate, and it is equally clear that under the first item of the codicil he took an absolute estate. Whether the language used in the codicil in regard to the property therein mentioned is intended to be substitutional for that withdrawn from the first item of the will, we will discuss here after. In construing the codicil as a part of the will, if the same property mentioned in the first item of the will had been by a subsequent clause of the same paper conveyed, by the words used in the codicil, the latter clause, in both intent and terms, would have prevailed over the former. And I may remark that the rule requires more strength and clearness of expression to carry change of intent at the time of making a will, where two clauses are repugnant, than at a subsequent time, when the making of a codicil implies change of sentiment in the premises. If the two clauses as to the same property had been found in the same will, the one would have been a life-estate and the other an absolute estate. The language used in the former is "that the control and possession I hereby give, etc., shall amount to nothing more than a life-estate;" in the latter, "I bequeath to my said son all my claim, title and interest to and in," etc. The rule is, where this repugnance exists, the latter disposition prevails cum duo inter se repugnantea reperiuntea in testamento ultimum ratum est: Co. Litt. 112; and this rule has been held by Lord Alvanly, Sir James Mansfield, Lord Eldon, Sir John Leach, Lord Brougham, etc., etc. In cases where the repugnance arises by the provisions of the codicil and by the provisions of the same testamentary paper, greater effort is necessary to reconcile the latter than the *former, where the act testifies to a design of change and alteration of the original instrument: Jarman on Wills, 156. And where by the codicil an absolute estate is given, without and referential words carrying back the bequest, under limitations in previous provisions,

Courts cannot supply such intent by constructions. Where the devise is complete, separate and unequivocal, the law inhibits the construction of lesser estates, where no words of limitation are employed by the testator: Code 2222.

2. Nor does this rule infringe the principle of construction applicable to wills, that Courts will gather from all legal sources the intent of the testator so as to give it effect. This rule would be strained too far if courts were competent to pronounce the intent of the testator without drawing it from the instrument itself, under plain principles regulating the mode by which it may be legally ascertained. Perhaps no stronger expression of the principle can be found than that laid down by Redfield where he says: "The construction of a will depends upon the intention of the testator, to be ascertained from a full view of everything contained within the four corners of the instrument." It is not intended that courts should substitute intention, to change the plain construction of words. The language of Lord Eldon in Chambers v. Brailsford, 2 Merivale, 24, embodies the philosophy of the law on this subject: "Whatever may be my opinion as to the probable intention of the testator, I am bound in this case by the rule of law." And Lord Mansfield tersely remarked, "the principle is fully settled and established, and no conjecture of a private imagination can shake a rule of law." And fully concurring in the wisdom and force of these sentiments, I feel sustained in the assertion that, while intent may be the key to the construction of a will, the facts which the key will fit, must be found in the instrument; what is meant must be deduced from something said, and not depend upon conjecture. But under the facts in this case, and out of the language used by the testator, I deduce his intention to be favorable to the legal intent. He gave certain lands to his son, and he knew how to create a life-estate *therein, and uses fit and appropriate words to consummate his purpose. Several months subsequently he made the codicil, and expressed the reason for this, that he desired to change some of the provisions of his will; not by substituting some other property but by a change of the provisions of his will. He then proceeded in execution of his purpose, and did so in plain, unambiguous language. The property given by the codicil is town property in Montezuma—a class of property worthless as a life-estate—that was valuable only in view of improvement, and this property by his will was directed to be sold, and by the sixth item fettered with no limitations. And the property he withdrew from the first item of the will, is, by subsequent provision in its disposition by the codicil, encumbered with no such limitation. It does appear that his intention to change the provisions of his will was to extend to the property itself thus changed, and the appointment of a trustee to hold the legal estate is compatible

and not inconsistent with the fee. Under the English law statute, 3 July, 1837—"An Act for the amendment of laws with respect to wills"—it was held, that when any real estate shall be devised to any person, without any words of limitation, such devise shall be construed to pass the fee simple, suggested by the legal statesmanship of Lord Denham in relation to the difficulty of settling the rule as to devises to trustees. That act establishes the rule "where any real estate shall be devised to a trustee without any express limitation of the estate, to be taken by such trustee, such devise shall be construed to vest in such trustee the fee simple or other the whole legal estate the testator had." Under our system of laws and the adjudication of our Courts covering trust estates, we see the applicability of the principles laid down, and the last item of the codicil appointing a trustee for the preservation of the property was not such a limitation or restraint upon it as changed its legal character as to the amount of the estate granted. And I hold that a fee simple estate under our laws may be conveyed in trust by a testator, to one otherwise sui juris for the purposes of its preservation. The right and dominion over the estate vests *under the law a power in the power to protect it, through the agency of trustees, to the use and enjoyment of his beneficiaries, and such interposition for its protection will not diminish its quantity as to interest, without words of limitation expressly, or by necessary implication of intent arising, out of the construction of the instrument under rules of law impose a lesser estate. And under the will of Mr. Felton we do not hold the trust applied to the other property granted by the will exclusive of that given by the codicil, but applies equally to both.

3. In relation to the estate granted by the 3d item of the will, it is our opinion that the minor children took absolute estates therein. That item gives all his property, not otherwise disposed of, equally to them; his bequest is clear and contains no limitation as to the quantity of the estate given. The law of construction places upon the words used their plain and unambiguous meaning. The only question arises upon the caution indulged by the testator against imprudence or misfortune, and his consequent imposition on each of them and the property given them, the same restrictions and regulations applied by the 1st item of his will upon the estate given therein to his son John Micajah. We hold that, neither by the language used nor the fair interpretation of the testator's intent, can the property thus given to be divided equally among his three children, under this item of his will, be regarded as a life-estate. The testator does not say so, nor does he impose any restriction or regulation that would, by necessary construction, lead to such a result. The intention of the testator, taken from the legal interpretation of his words, is to the effect, that after disposing of

the property equally among his children he desires the protection of the law invoked for its preservation to their use and enjoyment, and the mode indicated is consistent with the absolute estate which he has given them. It is not in the province of Courts to infer lesser estates than those given in the will by supplying language essential to support such a theory of construction; and without there arises doubt or uncertainty as to the terms used in the will, the law does not permit such a *latitude of construction as authorizes intent to govern, in matters of limitation to estates vested; for this would not be within, but without the rules of construing wills. It would be the substitution of opinion, based on the caprice of conjecture, for that substantial justice which confines the construction to the language plainly express. This item gives an absolute estate, and if we transpose the words used this result is inevitable. If we look to the object in view, we still find the same legal consequence. If we place such estate under the blended light of law and logic we still see that it is an absolute estate. If we carry our minds back to the 1st item we find he conveys in that a life-estate, by express words. And after re-interating the facts, he imposes certain restrictions. If we apply the restrictions to the bequests in the 3d item of his will, we still see the distinction and difference of the testator's disposition. For he uses language capable of bearing no other construction than an absolute estate to his minors, with regulations imposed, not to defeat the estate or diminish it, but to secure the more effectually its enjoyment.

4. And we hold that on the death of the minors, whatever interrest John Micajah took in their estate he took as an heir at law, absolutely with full power to dispose of it, and his daughter, Mrs. Hill, now takes, as the heir at law of her father, whatever he would have been entitled to in the premises.

5. In relation to the property withdrawn from the first item of the will and disposed of by the second item of the codicil, we hold that the children, including John Micajah, all took an absolute estate, and the imposition of a trust thereon did not diminish such estate, but was within the intent of the testator, the better to secure it for their enjoyment. And in such estate, if not disposed of by John Micajah during his life, his daughter took his share therein as his heir at law at his death.

6. We hold again, that, inasmuch as Mrs. Hill takes from her father as his heir at law, the submission to arbitration in this case was not, under the circumstances of representation *averred, such a submission of any interest she was entitled to as heir at law of her father, (particularly as it does not appear in such arbitration, that she was legally represented,) as barred her by such judgment on

the award of the arbitrators. And again, as heir at law we hold that she is not barred by the Statute of Limitations; for her rights as heir at law are not in fact within the time the Statute of Limitation is of force..

Judgment reversed.

WARNER, J., concurring.

The testator devised a life-estate only, to his son, John Micajah, to the Rushin land, by the first clause of his will, with remainder to his grand-children, and directed that, "Should the said John Micajah attempt to sell the same, or become so involved that the same would likely be sold for his debts, the proper Court having jurisdiction, shall appoint a procheim ami, or next friend, to protect the rights of the remaindermen in the premises, in such way as shall be just and equitable." After providing for his wife, and the payment of his debts, he devised and bequeathed the balance of his property, consisting of lands, slaves, plantation stock, choses in action, and all other things whatsoever, to his three other children, William Noah, Augustus C. and Jane Elizabeth Felton, to be equally divided between them, share and share alike, and declared that, "To guard against imprudence or misfortune on the part of all my children, I hereby impose on each of them, and the property herein bequeather to them respectively, the same restrictions, and regulations hereinbefore applied to my son John Micajah, and the interest he may take under this will." By the sixth clause of the testator's original will, he directs that, "The proceeds of the lands now laid out for the town of Montezuma, shall be equally divided among all my children, and they are to have a vested and equal interest in said land or town site." No life-estate or estate in remainder, was created by the original will in the Montezuma property.

On the 15th day of April, 1852, the testator made a codicil *to his will, by which he expressly revoked so much of the first clause of his original will as gave to his son, John Micajah, a life-estate in the Rushin tract of land, and devised to his said son all his claim, title and interest to and in the town of Montezuma, and the parcel of land connected therewith, consisting of twenty acres which I jointly hold with John T. Brown, and my said son John Micajah is to have no portion of any lands, except the Montezuma property to the extent as aforesaid; and directed by said codicil that "All my lands there withdrawn from the first clause of my said will, are to be sold by my executors, and the proceeds thereof, to be equally divided among all my children, share and share alike, including John Micajah." The testator by his codicil appointed C. H. Young a trustee for all his children, sons and daughters, and vested in him the legal estate to all the property specified in his said will, for their own separate use and benefit, and authorized and required said trustee to keep the property of each

of his children from waste, and to preserve the same in his hands, or in such form as he may deem best for their interest and happiness, allowing to my said children the free use and profits of said property, but not the right to sell or dispose of the same, without the consent of my said trustee or his successors. The testator, in the preamble to his codicil, after referring to his original will, declares that it is his desire to change some of the provisions of said will. It was the intention of the testator in making the codicil to his will, and such is the legal effect thereof, to expressly revoke so much of the first clause of his original will as devised to his son, John Micajah, a life-estate in the Rushin tract of land, with remainder to his grand-children, and he devised an absolute estate to the Montezuma property to his son, John Micajah, and not a life-estate only, with remainder over to his grand-children. The "change" which the testator intended to make in his original will by the codicil thereto, was to devise an absolute estate in the Montezuma property to his son, John Micajah, instead of a life-estate in the Ruchin tract of land, and to vest the legal title thereof, as well as the legal title of *all the property devised and bequeathed to his other children, in C. H. Young, as trustee, and his successors in trust, for their own separate use and benefit, with the limitation and restriction of the right and power of the devisees to sell said property, without the written consent of said trustee or his successors. A purchaser of the Montezuma property from John Micajah, the devisee under the will of the testator, with the written consent of the trustee named therein, or his successor, would have acquired an absolute fee simple estate to the property so purchased, and not a life-estate only. The devises and bequests of the testator to his other three children, William Noah, Augustus C. and Jane E. Felton, conveyed to them an absolute fee simple estate in the testator's property, the legal title of which vested in the trustee above named, in the same manner and with the same limitations and restrictions applicable to the devisee of the Montezuma property to John Micajah as before stated; upon the death of either of the said devisees or legatees, the survivor or survivors took the share or shares of the deceased, as heirs-at-law, and not as remaindermen under the will of the testator.

The words "to protect the rights of the remaindermen," are stated by the testator in the first clause of the will, cannot have the effect to create an estate in remainder, as claimed for them in the construction of the will, in relation to the Montezuma land, nor the devise and bequest made to the testator's three youngest children, for the simply reason that the testator did not create any estate in remainder in the property thus disposed of by him, to be protected, but, on the, contrary, having expressly revoked, by his codicil, the devise of the Ruchin land, which was the only clause that did create an estate in remainder in any of

Felton v. Hill and Wife

his land, he then provided a new and different mode for the protection of the property, by vesting the legal title thereof in a trustee for that purpose, with specified restrictions as to the disposal of the same. After the revocation of the devise of the Rushin lands, as contained in the first clause of the testator's will, there was no estate in remainder in any land to be protected, *as none was created or devised by any other clause of the testator's original will or codicil. It was the intention of the testator, and a paramount object with him in the execution of his original will, to protect the property in the hands of his children against imprudence or misfortune on their part, and especially on the part of John Micajah, to whom he had given a life-estate in the Rushin tract of land, with remainder to his children; for he expressly declares, that "should the said John Micajah attempt to sell said property, or become so involved that the same would likely be seized for his debts, I direct that the proper Court having jurisdiction shall appoint a prochein ami, or next friend, to protect the rights of the remaindermen in the premises in such way as shall be just and equitable," and that was the restrictions and regulations which the testator imposed on his other children in the third clause of his will, not for the purpose of protecting remaindermen, when no estate in remainder had been created by the third clause of his will, as had been done in the first clause, but for their own protection against imprudence and misfortune. After making his original will, the testator was not satisfied that he had sufficiently provided therein for their protection against imprudence or misfortune, and desired to change some of the provisions of his will. By the codicil he did change and expressly revoke that clause of his will which gave to his son John Micajah a life-estate in the Rushin land, with remainder to his children, and the only clause in the will which conveyed a life-estate in land to any of his children, or an estate in remainder to any of his grand-children, and provided another and different mode for the protection of the property against the imprudence or misfortune of all his children by the appointment of a trustee, and vesting in him the legal estate of all the property which he devised and bequeathed to them absolutely, restraining their right to sell or dispose of the same without the written consent of such trustee or his successors. Construing the original will and codicil together, it was not the intention of the testator to devise a life-estate in his land to any one of his children, with remainder to his grand-children, *and such is not the legal effect thereof, in my judgment. I am therefore, of the opinion that the judgment of the Court, below, in making the decree set forth in the record, should be reversed.

McCAY, J., dissented, but wrote no opinion.