# CHARLESTON.

## UNIVERSITY *v.* TUCKER.

Submitted June 18, 1888.—Decided Dec. 1, 1888.

1. INJUNCTION—WASTE.

A contingent remainder-man may maintain an injunction to restrain waste by the life-tenant.

2. WILLS—CONSTRUCTION—LIFE-ESTATE.

Where the will gave to a devisee in clear and express words a life-estate only, and in the codicil provided, that moneys paid to the executor on '' obligations owing to the testator should be invested in bonds of the United States, the interest of which should go to said life-tenant, and such life-tenant should likewise have the profits of the testator's estate not given to his wife,'' by the use of this language he did not change the life-estate into a fee.

3. WILLS—CHARITIES—BEQUESTS TO FOREIGN CORPORATIONS.

Foreign corporations may take bequests of charities under a will made in this State, when and to the extent authorized by their charters.

4. WILLS—AMBIGUITIES—DESCRIPTION OF LEGATEES—EVIDENCE.

When such corporations are improperly described in the will, the bequest will not fail, if it be clearly shown by proper proof what corporations were meant by the description.

5. WASTE—BRICK-MAKING.

Taking clay from the soil by a life-tenant, and manufacturing the same into brick and selling the same is waste.

*J. Dallas Ewing* for appellant.

*H. C. Harvey* for appellees.

JOHNSON, PRESIDENT :

Ezekiel Harker of Brooke county on the 29th day of April, 1865, made his last will and testament, in the first clause of which he directed the payment of debts *etc.* In the second clause he used the following language : "I give and devise to my wife, Elizabeth Harker, the house I now occupy with the lot, on which it stands, containing about six acres, which I purchased from C. B. Prather ; also the lot of ground thereto

adjoining, which I purchased from O. W. Langfitt, and the lot of ground I purchased from Richard Starr, adjoining same, together with all the household goods, farming utensils, and other visible property, on or about said premises at the time of my death, to be hers during her natural life, or so long as she remains my widow, and no longer. I also give and devise to my said wife, during her natural life, or while she remains my widow and no longer, my property annuity in Temperanceville, Allegheny county, Pennyslvania. * * * The above is to be taken in full of any and all rights that my said wife might have under the law as my widow in and to my estate, either real or personal."

By the third clause he bequeathed to Martha Thorn a house and lot in Wellsburg, known as the " Lazier Property."

The fourth clause of the will is as follows : "After the death or marriage of my wife, Elizabeth Harker, I will and direct that all my property, real and personal, and whereever located, (except the property devised to Martha Thorn,) go and pass to the use of my adopted daughter, Sarah Harker Potter, for and during her natural life ; but if said Sarah Harker Potter shall marry and bear a child or children by said marriage, and shall have at her death a child or children of the age of twenty one years, then and in that event, upon the death of said Sarah Harker Potter, all of my said estate, real and personal, shall pass to and belong absolutely to said child or children, which may have arrived at the age of twenty one years; it being the intent and purpose of this clause of my will, that said Sarah Harker Potter shall have a life estate in my real and personal property, except the house and lot herein given to Martha Thorn, wife of Amos, and in the event she shall marry and by virtue of such marriage bear a child or children and said child or children shall arrive at the age of twenty one years, and they or either of them being alive at her death, then and in that event, the property aforesaid, the property shall go and pass to such child or children equally, share and share alike."

The fifth clause provides : "But if said Sarah Harker Potter shall die leaving no children by legal marriage, or if she shall die leaving a child or children by legal marriage, but said child or children shall die before arriving at the age of twenty

one years, then the property devised by the fourth clause of this will shall go and pass, share and share alike, to the Lewisburg Baptist University and the successors in office of said University, and to the Baptist Publication Society in Philadelphia, Pa."

On the same day the testator made a codicil to his will, witnessed by the same witnesses, whose names are subscribed as attesting witnesses to the will. The codicil is as follows: " I give and bequeath to my friend William P. Townsend the sum of five hundred dollars, for his services rendered, and hereafter to be rendered, out of funds now in his hands. (2) I will and direct that Sarah Harker Potter shall keep the property on which I live, and the house in Wellsburg, being the property bought from Connell, in good repair; and if she shall fail to do so, then my executors named in this will shall keep the property out of any funds belonging to my estate.

Any funds coming into the hands of my executors by the payment of obligations owing to me shall be vested by my executors in bonds of the United States, the interest of which shall go to Sarah Harker Potter. She shall likewise have the profits of my estate not given to my wife, Elizabeth Harker. And I do declare this to be codicil No. 1 to my last will and testament."

The will was admitted to probate on the 26th day of September, 1865. At May rules, 1884, in the Circuit Court of Brooke county, contingent remainder-men, the University at Lewisburg and the American Baptist Publication Society filed their bill, in which they set forth said will, and that Elizabeth Harker is dead; that Sarah Harker Potter married one William Tucker, but that she is childless; that she has leased a portion of the property, in which she had a life estate to Benjamin Jacobs, John W. Jacobs and Emery Jacobs for the purpose of making brick from the clay on said ground and selling said brick in the market; that they are committing waste by taking the clay and making holes and ditches in the ground; that she had no right to lease the ground for any such purpose; that she only has a life-estate in the land, and if she die childless, or if she has children who do not arrive at the age of twenty one years, they will be entitled to the property in fee; that they are incorporated

and capable of taking the bequest *etc.* and prayed an injunction against the waste. The bill also sets up the fact that Tucker and wife had brought a suit some time before in the Circuit Court of Brooke county against one George M. White for the specific performance of a contract of sale of a part of said land, in which they made the plaintiff here defendants and set up said will and insisted, that under it Mrs. Tucker owned the fee in the land and not a life estate only. There was a demurrer to the bill, and the demurrer was sustained and the bill afterwards dismissed, and the plaintiffs here insist, that the defendant, Sarah H. P. Tucker, is here estopped to claim the fee in said land; that the question is *res judicata.*

The bill exhibits the process and return to the bill, the demurrer, the decree sustaining the demurrer, and the order at a subsequent term dismissing the bill, as the plaintiff had failed to amend.

The defendants, Tucker and wife, demurred to the bill filed in this cause for want of equity. The demurrer was overruled. They then answered the bill, in which answer they insist, that by the proper construction of said will and codicil on the death of Elizabeth Harker Mrs. Sarah H. P. Tucker took the remainder of the estate in fee; that the clause in the codicil that the said Sarah "should likewise have the profits of my estate not given to my wife Elizabeth Harker," gave to said Sarah a fee-simple in the remainder of the estate, the words being repugnant to the clause in the will limiting her to a life-estate. They admit the lease and claim, they had a right to lease the property and do, as the bill had alleged they had done, in respect to the property. The answer denies, that plaintiffs are corporations capable of taking by devise the said property, and for that cause insists, that the property is vested in the female defendant under the residuary clause in the codicil in accordance with section 13, ch. 77 of the Code. Respondents admit the land is valuable, and their right to its use is valuable to them; but they deny, that, after the clay is removed under this contract with their co-defendants, the land will be less valuable, or that it will be left in ditches and pits, or be rendered unfit for building sites, but, on the contrary, that it will be of better grade, more valuable, and more suitable for building purposes, as they are advised.

The other defendants, the lessees, answered the bill, and they also insist, that under Ezekiel Harker's will Mrs. Tucker took the fee after Elizabeth Harker's death. They admit, they made a contract with Tucker and wife to take clay on part of said land and manufacture brick, and that they have a right under and by virtue of said agreement or lease to make and burn brick on said land and sell the same. They exhibit the said agreement with their answer, and by it they have the right for five years from the date thereof,— the 13th of February, 1884,—provided Mrs. Tucker should live so long, to make and sell brick on the premises, and were to pay Mrs. Tucker seventy five cents for every 1,000 bricks made and burned on the premises; and the parties agreed to make at least 300,000 bricks every year of the term. The bill exhibits the charters of both the plaintiffs, which show that each was incorporated at the time the will was made.

Proof was taken to show, and it clearly shows, that they were the identical corporations meant by the testator, although they are not accurately described in the will. The testator calls one the " Lewisburg Baptist University," and the other the " Baptist Publication Society in Philadelphia, Pa." The correct names are as disclosed by their respective charters, " The University at Lewisburg," and " The American Baptist Publication Society." The cause was removed to the Circuit Court of Wood county, and on the 29th day of November, 1884, was heard; and the court decided, that by the will of Ezekiel Harker the defendant, Sarah H. P. Tucker, took only a life-estate, and that the plaintiffs were capable of taking under the will ; but, as the court was not fully satisfied, that the plaintiffs were the identical corporations named in the will, it was ordered, that testimony be taken on that question. The court was further of opinion and held, that the record of the former trial was a bar to further litigation between the parties on the question as to what estate Mrs. Tucker took under the will ; and on the 15th day of July, 1885, the proof as to the identity of the corporations having been taken, the court perpetuated the injunction with costs. From these two decrees the defendants, Tucker and wife, appealed.

The first question presented is : Have the plaintiffs, being

contingent remainder-men, the contingency not having yet happened, a right to maintain this suit? A contingent remainder of inheritance as well as a vested remainder is. transmissible to the heirs of the person, to whom it is limited, if such person chance to die before the contingency happens. 1 Lomax Dig. 466. Lomax further says: "Although a contingent remainder can not be passed or transferred by a conveyance at law before the contingency happens, otherwise than by estoppel, by deed or fine, or by a common recovery, wherein the person entitled to the contingent estate comes in as a vouchee, yet it seems that contingent estates are assignable in equity. Contingent remainders were formerly held not to be devisable by the person entitled thereto, whilst they remained in contingency, but it has been determined in some modern cases, that where contingent remainders are descendible to the heirs of the persons entitled to them, they may be devised by will like any other estates." Id. 467; *Perry* v. *Jones*, 1 H. Bl. 30; *Perry* v. *Phelips*, 17 Ves. 182. From this it appears, that the contingent remainder-man, before the contingency happens, has such an interest in the estate as to authorize him to maintain an injunction against the life-tenant to restrain waste; and it has been so held. Fearne Rem. 563; *Bewick* v. *Whitfield*, 3 P. Wms. 268, note; *Williams* v. *Bolton*, 1 Cox 72.

It was assigned as error by the appellant's counsel, that no rule was given defendants to answer the amended bill. This point is not made in the arguments for appellants, because no doubt the record shows, that the bill was amended before their appearance. But it is here contended by coun·sel for appellant, that Mrs. S. H. P. Tucker under the codicil of the will took a fee in the estate; that notwithstanding the fact, that in the will she was by express words limited to a life-estate, yet this language in the codicil: " She shall likewise have the profits of my estate, not given to my wife, Elizabeth Harker," changes the will and gives her a fee, being repugnant to the words used in the will. Counsel cites to sustain this position : *Bolling* v. *Robertson*, 6 Munf. 220; *Allan* v. *Backhouse*, 2 Ves. & B. 65; *Backhouse* v. *Middleton*, 1 Ch. Cas. 173; *Schermerhorne* v. *Shermerhorne*, 6 Johns. Ch'y 70; *Felton* v. *Hill*, 41 Ga. 554.

In *Bolling* v. *Robertson* no opinion was delivered, but the decree of the chancellor was affirmed. The will contained this clause : " All my negroes and stock in the counties of Goochland and Powhatan be the December after my death equally divided between my said wife and my son, William Bolling, to be kept together and worked on my estate known formerly by the name of ' Licking Hole,' now ' Bolling Hall,' and on my island called ' Bolling's Island,' both lying and being in the county of Goochland, and on my plantation in Powhatan called ' Hamstead,' and the profits thereof to be equally divided between my said wife and my son, William Bolling," *etc.* On the 2d day of July, 1818, Chancellor Taylor decreed that the wife took one moiety of the negroes *etc.* absolutely. " He rejected that construction of the will of Thomas Bolling deceased, which would render utterly useless, insensible and inoperative that provision of the said will, which directs that all the testator's negroes and stock in the counties of Goochland and Powhatan should be the December after his decease equally divided between his wife, Betty Bolling, and his son, William Bolling, and gave such a construction to the said will, as would render all its parts sensible, consistent and operative." In this case the chancellor did not give to the word " profit " any technical meaning.

In *Allan* v. *Backhouse*, 2 Ves. & B. 65, the words " rents and profits " were extended beyond their natural meaning, " annual profits," to mortgage or sale," because necessary to effect the object,—raising a gross sum. In the opinion it was said : " It was fairly argued, that, though the natural interpretation of these words is ' annual rents and profits,' and such a direction to raise money by rents and profits seems to be put in contradistinction to sale or mortgage, the word ' profits ' *ex vi termini* includes the whole interest, as a devise of the profits would pass the land itself. A direction of this sort however. to raise money out of the rents and profits, is not exactly the same as a devise of the estate under that description by giving the profits. The construction can not depend on the effect of the word ' profits ' *per se*, which would include all the land might produce ; but the word ' profits ' is to be taken, as it stands here, coupled with the rents. Whatever

might be the interpretation of these words, if the case were new—whatever doubt might arise as to whether they denoted annual or permanent profits, there is no room now for speculation, this Court having in a number of cases, where the object was to raise a gross sum at a fixed time, extended the meaning of the words, unless restricted by other words, so as to confer a power to raise such a sum by sale or mortgage." In *Shermerhorne* v. *Shermerhorne*, 6 Johns. Ch'y 70, it was held that the words "rents and profits" in a devise may be so construed as to authorize a sale of the land, when necessary to raise a sum so as to effect the object of the testator. In that case Chancellor Kent said: "In the present case, the testator, no doubt, had it in contemplation, that the rents and profits of the farm without a sale would be sufficient to support the lunatic, and that the estate after her death would go to Abraham Schermerhorn and his heirs. But his other intention was equally manifest, that his daughter must at all events be comfortably maintained out of the profits or proceeds of the farm ; and he expressly authorized ' any means,' by which the farm was to produce the requisite ' profits.' And if that end can not be otherwise obtained it is the duty of the court, in obedience to the long and uniform course of authorities, and to the necessity of the case to direct a sale of the farm." By the will in that case, the executor was authorized to lease (the farm,) " or by any other means out of the profits therefrom arising" to support and maintain Nelly during her natural life. It seems to us clear, that it was the intent of the testator, that Nelly should have a comfortable support, if it required the whole farm to furnish it. Chancellor Kent said: "The great object of the will was the comfortable maintenance of that afflicted and unfortunate daughter, and the testator has shown a strong solicitude on that point throughout the will."

In *Felton* v. *Hill*, 41 Ga. 554, the first clause of the will gave to John Micajah Felton, the eldest son, "for and during the term of his natural life," five negroes and a tract of land. And to make it more specific, he further said: "And I furthermore declare that the control and possession, which I hereby give to my son, John Micajah, of the property aforesaid, shall amount to nothing more than a life-estate in the

same" *etc.* By the first clause of the codicil to the will the testator provided as follows: "In the first clause of my said will I gave and bequeathed to my son, John Micajah, a life-estate in certain property therein mentioned. Now I revoke so much of said clause as relate to the lands therein specified, and hereby give and bequeath to my son, John Micajah, all my claim, title and interest to and in the town of Montezuma and the parcel of land connected therewith, consisting of twenty acres more or less, which I jointly hold with John T. Brown; and my son, John Micajah, is to have no portion of any lands except the said Montezuma property, to the extent as aforesaid. And further my said son, John Micajah, is to pay to my executors all the money or sums, that I have advanced to him, or paid on his account or may hereafter advance or pay on his account, except one share thereof, equal to a share, counting my said wife, Lavinia, and all my children each as a shareholder, which one said share he is permitted to retain for his own use, and no more." By the second clause of the codicil he provided: "All my lands then withdrawn from the provisions of the said first clause of my said will are to be sold by my executors, and the proceeds thereof to be equally divided among all my children, share and share alike, including John Micajah."

The court very properly held that John took an absolute estate in the property under the codicil. The codicil clearly manifested the intent of the testator to change the provision made for his son John, and he clearly withdrew all the lands from the provisions of the first clause of the will, giving by the codicil his interest in the Montezuma property, to John in fee. As has been uniformly held everywhere, it is the intent of the testator that must govern the disposition of his property. And that intent, whenever it is possible to do so, must be gathered from the will itself. Every word in the will must be given its natural effect, provided this can be done consistently with the general intent of the whole will taken together; and no word is to be rejected unless there can not be a rational construction of the will with the word as it is used. All the parts of the will, including codicils, which are parts of the will, are to be construed together, so as, if possible, to form one consistent whole.

*Graham* v. *Graham*, 23 W. Va. 36; *Hinton* v. *Milburn*, Id. 166; *Couch* v. *Eastham*, 29 W. Va. 784, (3 S. E. Rep. 23).

It seems to us, that the intent of the testator in the will before us is very apparent. First, he desired to provide for his wife; so he gave her a life-estate in certain real and personal property. He then gave a house and lot in fee to Martha Thorn. After the death of his wife he desired all his real and personal property, except the house and lot devised to Martha Thorn, to go to his adopted daughter, Sarah Harker Potter, for life. Then, if she married and had children who arrived at the age of twenty one years, he desired all his property to go absolutely to those children. He wished to provide for his wife for life, his adopted daughter for life, and, if she had children who should live to maturity, he desired that they should have his property; and he still had other objects of his bounty, in case his adopted daughter should die childless, or her child or children should die under twenty one years of age. In that event he declared the property should go to the plaintiffs. On the same day he executed his will, and perhaps àt the same time, he seems to have recollected some property he had forgotten. He had not during his wife's lifetime disposed of the property known as the " Connell " property, nor bonds *etc.* " owing to him." All this property was included in the fourth clause of the will and was after the death of his wife bequeathed to Sarah H. Potter for life; described as " all my property, real and personal, and wherever located," (except the property devised to Martha Thorn.) Therefore instead of having his will re-written he executed a codicil. He directed his adopted daughter, Sarah Harker Potter, to keep the property, where he lived, and the " property bought from Connell " in good repair; and if she failed to do so he directed his executors to do so. He also gave his friend William P. Townsend a bequest of $500.00, and provided in the codicil as follows : "Any funds coming into the hands of my executors by the payment of obligations owing to me shàll be invested by my executors in bonds of the United States, the interest of which shall go to Sarah Harker Potter. She shall likewise have the profits of my estate not given to my wife, Elizabeth Harker." It can not be supposed that the

word "interest" carried with it the bonds. Such a construction would do violence to the manifest intent of the testator. It is clear, that the testator intended all the moneys paid to his executors should be by them invested in United States bonds and the accruing interest paid to the adopted daughter. Then he says she shall likewise, in like manner, just as the interest on the bonds is to be paid, " have the profits of my estate not given to my wife," that is the annual profits. No necessity here to raise a certain gross sum, which should be paid to her. It is not said as in the case in 6 Johns. Ch'y. *supra*, that the intent of the testator was, that Sarah Harker Potter should receive her support from the " profits " of the " Connell " property. There is no repugnance between the language used in the codicil and the will. They can well stand together. Clearly Mrs. Tucker only took a life-estate under the will of Ezekiel Harker. Section 8 of chapter 71 of the Code, cited by appellant's counsel, does not apply, because according to the exception therein contained, a " contrary intention does appear by the will." To give the construction contended for by counsel for appellant would also destroy the devise made to Martha Thorn, which is clearly against the intent of the testator. Having arrived at this conclusion, it is immaterial to inquire whether this question was *res judicata* by the former suit.

Could the corporations take the bequest to them? It is unnecessary to discuss this question, as it was thoroughly considered in *Wilson* v. *Perry*, 29 W. Va. 169, (1 S. E. Rep. 302) and this Court decided, that corporations have the legal capacity to take charitable bequests, when and to the extent authorized by their charters. It was further held, that, where the person, object or subject referred to in a bequest is uncertain or does not precisely answer the description given in the will, or where there are two or more objects or subjects, which equally answer the description, resort may be had to parol evidence and surrounding circumstances to show, what the testator intended by the expressions which he used; and, if such intention is ascertained with sufficient certainty, the bequest is valid; that where the name or description is erroneous, and there is no reasonable doubt as to the person who was intended to be named or described, the

mistake will not defeat the bequest; and, that the same rule applies as well to corporations as individuals.

Here the proof clearly shows that the testator intended the " University at Lewisburg " and the " American Baptist Publication Society," by the description of the corporations used in the will.

Is it shown in this record that waste was committed? It is charged in the bill and not denied in the answer, that the defendants, Tucker and wife, leased a part of the premises to Jacobs and others for the purpose of taking the clay to manufacture into brick; and the lease is exhibited with the answer of the tenants and shows it is for a term of five years, and the tenants bound themselves to manufacture 300,000 brick per year, and pay to Mrs. Sarah H. P. Tucker 75 cents per thousand for said brick; and it appears from the pleadings, that the defendants, the tenants, had manufactured and sold brick and were proceeding to do so, when the injunction was granted. According to all the authorities this is waste. It is taking the very substance of the inheritance. There is no evidence that brick was made on the land in the lifetime of the testator. In *Smith* v. *Rome*, 19 Ga. 89, it was held to be waste to take rock from land for the purpose of paving the streets of a city. The life-tenant cannot cut turf on bog lands for sale. 1 Co. Litt. 54*b*. He cannot dig for gravel or lime, clay, brick, earth, stone or the like except for repair of the buildings or the manuring of the lands. *Dickinson* v. *Jones*, 36 Ga. 97. The life-tenant has the usufruct of the land. He can enjoy the annual produce of the land during life, but he must not do any damage to the absolute property in the remainder-man.

The decree of the Circuit Court of Wood county perpetuating the injunction is affirmed.

AFFIRMED.