# CHARLESTON.

## KOEN et al. v. BARTLETT et al.

Submitted June 12, 1895.—Decided Dec. 11, 1895.

1. TENANT FOR LIFE—OIL AND GAS LEASE—ROYALTY.

An owner in fee simple makes an oil and gas lease for a term of five years, and as much longer as the premises are operated for oil and gas, or the rent for failure to commence operating is paid, for, among other things, one-eighth part of all oil produced and saved, to be delivered in the pipe lines to the credit of the lessor. The lessor then sells and conveys one undivided moiety of the one-sixteenth part of all the oil produced and saved. Af-

terwards, but before any oil is bored for or produced, the lessor sells, grants, and conveys the land in fee simple to his six children, to each one a part, by metes and bounds, in consideration of natural love and affection, by deed of general warranty, "except that the party of the second part takes the same subject to any lease for oil or gas made by the party of the first part or any sale of royalty for oil or gas made by him ;" and, by the same deed he retains full control of said land in all respects, and for all purposes, during his lifetime. Soon thereafter oil wells are bored, and oil produced, saved, and put in the pipe lines in large quantities. *Held*, the one-eighth royalty goes of right to the tenant for life, and his grantees, during the continuance of the estate for life, and not to the owners in fee of the estate expectant thereon.

2. TENANT FOR LIFE—OIL AND GAS LEASE—ROYALTY.

The tenant of an estate for life, unless restrained by covenant or agreement, has a right to the full enjoyment and use of the land and all its profits during his estate therein, including mines of oil or gas open when his life estate begins, or lawfully opened and worked during the existence of such estate.

ALFRED CALDWELL and W. P. HUBBARD for appellants:

1.—*Construction of Deeds.*—2 Lomax Digest, top paging 253; 1 Chitty on Contracts (16th Am. Ed.) 105 note, s. 106 note *a*, 107 note *c*, 117 note *y*, 117 note *x*, 117 U. S. 437; 19 W. Va. 483; 26 W. Va. 469.

II.—*The rule that a deed is to be construed most strongly against the grantor is seldom to be relied upon.*—1 Chitty on Contracts (16th Am. Ed.) 136, 137 and 138; 2 Parsons on Contracts, 506 *et seq.* and notes.

III.—*The life estate of Elijah Kearns is without impeachment for waste.*—69 Mich. 259; 11 East. 220; 33 N. H. 18; 2 Minor's Inst. 100; (75 Eng. C. L. 122); 2 B. & Ad. 437.

IV.—*The life tenant Kearns or his assigns can work mines to exhaustion.*—1 Rand. 258; 6 Munf.143; 110 Pa. St. 473; 19 Pa. St. 323; 24 Pa. St. 167; 85 Pa. St. 344; 10 Pick. 461; 31 Beavan, 334; 9 Jur. N. S. 9; 31 L. J. Ch. 809; 138 Pa. St. 606.

V.—*The wells are to be regarded as open mines at the commencement of the life estate, and the royalty belongs to the life tenant and his assigns.*—103 Pa. St., 300; 106 Pa. St. 392; 34 Beavan 114; 41 Pa. St. 357; 150 Ill. 560; L. R. 8 App. Ca. 641; 2 P. Wms. 388; L. R. 4 App. Ca. 454; L. R. (1892) 2 Ch. 211.

VI.—*The oil lease was a sale of the oil in situ.*—31 Pa. St. 483; 123 Pa. St. 241; 109 Pa. St. 583; 105 Pa. St. 472; 94 Pa. St. 22; 4 W. Va. 543; 35 W. Va. 473; 57 Pa. St. 83; 1 Lomax Digest, 2; 53 Pa. St. 287; 2 Washburn on Real Prop. 347; 10 East. 273; 12 Q. B. 739; 3 Washburn on Real Prop. 338, § 31 and cases in notes; 38 W. Va. 681.

VII.—*The reservation of the royalty is reserving a rent.*—44 Ohio St. 604; Woodfall's Land. and Tenant, side p. 375, 376; Taylor on Land. and Tenant, § 132; 10 Q. B. 173; 6 Q. B. 145; Woodfall's L. & T. 382.

VIII.—*This is not a case of waste, as the production is lawful and the whole of the oil is the property of the producer. A mere personal action is the only remedy of the owner of the royalty. He owns no oil for which trover would lie.*—41 Pa. St. 357; 1 Chitty on Pleading 160; 121 Pa. St. 495.

W. S. MEREDITH and JOHN BASSEL also for appellants, cited 7 W. Va. 289; 55 Cal. 267; Tied. Real Prop. § 72; 8 Min. 594; 19 S. E. Rep. 441; 14 Am. St. Rep. 663, note; 1 Rand. 258; 6 Munf. 143; 2 Rob. 507; 24 Am. Rep. 263; 150 Ill. 560; Bouv. Law Dict. word "Profits."

RAPHAEL HAYDEN and FRANK HAYDEN also for appellants, cited 130 Pa. 235, 250; 152 Pa. 251; 7 W. Va. 289; Preston on Estates 66, 72; 9 Atl. Rep. 255; 39 W. Va. 231; 2 B. & Ad. 437; 126 Pa. 117, 121; 14 Me. 216; 11 East. 220, 225; 93 U. S. 326; 69 Mich. 259; 81 Mich. 332; 33 N. H.'18, 21; 138 Pa. 606; Co. Litt. 54 b; 4 De G. & J. 414; L. R. 1 Ch. 552; L. R. 4 App. Cas. 454, 465; 33 N. J. Eq. 603, 611; Moseley 219; L. R. 2 Ch. 211; 150 Ill. 560; 73 Ill. 405; 103 Pa. 300; 7 Harris, 323; 12 Harris, 162; 32 P. F. Smith 144; 4 Norris 344; 24 Beavan, 114; 106 Pa. 301, 392; L. R. 8 App. Cas. 641; L. R. 2 H. L. Sc. 273.

JOHN A. HUTCHINSON, A. B. FLEMING, U. N. ARNETT, JR., and CHARLES POWELL for appellees:

JOHN A. HUTCHINSON cited 1 Washburn Real Prop. Bk. 1, ch. 5, p. 120 (5th Ed.) ss. 1 and 2; 1 Washburn Real Prop. Bk. 1, chap. 5, p. 134, pl. 1-2; 1 Washburn Real Prop. Bk. 1, ch. 5, § 4; 19 S. E. Rep. 441; 39 W. Va.

71

231; 1 Washburn Real Prop. Bk. 1, ch. 5, § 2; Co. Litt. 53b; 5 Coke, 12; Comyns Dig. "Waste," d. 4; 1 Rand. 258; 31 W. Va. 622; 1 Wash. Real Prop. Bk. 1, ch. 5, § 4, pl. 6, pl. 16, 17, 18, 19; 1 Ch. Rep. 57; Cooper R. 156; 19 Vesey, 299; Taylor L. and T. § 697; 3. Thomas' Coke 188, note; Coke Litt. 54; 1 Wash. Real Prop. Bk. 1, ch. 5, §§ 3-4; 5 Q. B. 683; 5 B. & Ad. 715; 2 Cr. & J. 223; 2 Pick. 362; 7 Term Rep. 383; 8 Wall. 276; 103 U. S. 575; 12 S. & R. 271; 39 W. Va. 231; 88 Pa. St. 198-201; 3 P. F. Smith, 229 and cases cited; 100 Am. Dec. 595; 3 Johns. 216-222; 1 Wash. Real Prop. Bk. 1, ch. 5, § 3, pl. 12-13; 39 W. Va. 231; 9 Johns. 108, 112; 33 N. H. 18.; 14 Me. 216; 34 W. Va. 384, 385; 25 Atl. 237; 7 N. H. 171, 175; 48 Md. 583; 31 Iowa, 138, 145; 3 Wend. 104; 11 Coke, Rep. 82; 7 Com. 232; 43 N. H. 320; Wash. Real Prop. Bk. 1, ch. 5, s. 3, pl. 49; 14 Atl. Rep. 364; 103 Pa. St. 300-307; 1 Drewry & Smale, 284, 299; 68 Am. Dec. 615; 41 Am. St. Rep. 397; 31 Pa. St. 475; 27 Pa. St. 339; 43 Am. Dec. 321; 52 Am. Dec. 479; Rawle on Covenants for Title, 115; 1 Wash. Real Prop. 134, 150, 151, also p. 548; 2 Allen (Mass.) 42-44; 3 Met. 79; 39 Ill. 372; 13 Ill. 625; 61 Am. Dec. 364; 3 B. Monroe, 58; 33 Pac. Rep. 987; 24 Am. St. Rep. 570; 55 Am. Dec. 234; 5 Call, 405; 7 Peters, 596; 99 Mass. 15; 123 Mass. 288; 10 Ad. & El. N. S. 178 and 204; 5 Barn. & Ad. 693; 8 Am. St. 128; 38 Am. Dec. 178; 58 Am. Dec. 234; 7 Peters, 596; 25 Wend. 458; 6 Munf. 134; 4 Kent. Com. 131; Cruise Dig. R. Prop. Pt. 7 Tit.; Shep. Touchst. 131; 1 Cen. Rep. 385.

U. N. ARNETT, JR., and CHARLES POWELL cited, 8 Am. St. Rep. 128; 52 Me. 263; 38 Am. Dec. 178; Rawle, Cov. (4th Ed ) 116, 117; Code, c. 71, s. 8; 66 Am. Dec. 705-7, 711, note; 64 Am. Dec. 362–7, note; 14 Me. 216; 53 Am. Dec. 621, 624; 93 U. S. 326; 7 Comyn. Dig. 670; 2. Swanton's Rep. (ch.) 113; Cruise Dig. R. Prop. Tit. 3, ch. 2; 2 Sto. Eq. Jur. §§ 913, 919; 3 Bingh. 207; 2 Adkins, 383; 53 Pa. St. 229; 63 Pa. St. 397; 32 Pa. St. 41; 55 Pa. St. 164; 101 Pa. St. 235; 129 Pa. St. 94; 77 Pa. St. 103; 11 Atl. Rep 453; 2 Cleveland Rep. 133; 92 Pa. St. 123; 39 W. Va. 231.

HOLT, PRESIDENT :

F. W. Bartlett and H. P. Brand, appellants on appeal from a final decree entered by the Circuit Court of Marion county on the 26th day of May, 1894, giving Koen the oil in question, as against Bartlett and Brand, the adverse claimants.

On the 19th day of September, 1892, defendant Elijah Kerns was the owner in fee simple and occupant of a tract of land of seventy five acres situate in Marion county, on Whetstone run, within the productive part of the Mannington oil field, as shown by the event. On that day he executed to C. S. Nay a lease for that part north of the county road, to mine and operate for oil and gas for the term of five years, and as much longer as the premises might be operated for oil and gas, at a royalty of one-eighth of the oil delivered in the pipe line. On the 4th day of March, 1893, Nay sold, transferred, and assigned his lease to plaintiff O. N. Koen. By deed dated 28th of September, 1892, Elijah Kerns had sold and conveyed to O. N. Koen the undivided moiety of the one-sixteenth part of all the oil and gas produced and saved from said land so leased. By deed dated 30th September, 1892, O. N. Koen sold and conveyed one undivided two-thirds of his interests conveyed to him by Kerns to Thornton F. Koen and J. T. Koen. Oliver N. Koen, by deed dated October 5, 1893, sold and assigned the Nay oil lease to the South Penn Oil Company, who opened the mine, found oil, and are producing it in large quantities. Elijah Kerns, by six separate deeds, dated December 3, 1892, for natural love and affection, sold and conveyed in severalty, by metes and bounds, to his six several children, in fee simple, in expectancy on the grantor's life estate thereby retained and reserved to himself, the said tract of land leased as aforesaid. Whatever interests these expectant owners of the inheritance had came by various conveyances to the plaintiffs, O. N. Koen, *et al.*

These deeds to the children are all alike, and any one will answer our present purpose :

"Elijah Kerns to Emeline Hays. Deed.

"This deed, made this 3d day of December, in the year 1892, between Elijah Kerns, of Marion county, West Vir-

ginia, grantor, of the first part, and Emeline Hays, of the same county and state, grantee, of the second part, witnesseth : That for and in consideration of the love and affection of the said Elijah Kerns for his said daughter, Emeline Hays, formerly Emeline Kerns, and other valuable considerations, the party of the first part does grant and convey unto the party of the second part the following described real estate, to-wit : A tract or parcel of land lying on Whetstone run, in Mannington district of Marion county, adjoining lands of Rachel A. Jones, M. E. Holbert, C. C. Fox, and Nimrod Hays, and bounded as follows : 'Beginning at a stone by the road, and, with line of said Rachel A. Jones, S. 84 E., 38 poles, to pointers; thence, with Holbert's, S., 16 W., 36½ poles, to pointers, to C. C. Fox; and with his line, N., 71 W., 33½, to stone ; and with the road and Hays' line, N., 50 W., 18 poles, to stone; N. 63 E. 10 poles, to stone; N. 34 E. 16 poles, to the beginning—containing nine (9) acres, more or less, with its appurtenances and privileges. And the party of the first part covenants with the party of the second part that he has good right and title to said property, and that they will warrant generally the same, except that the second party takes the same subject to any lease for oil and gas made by said first party or any sale of royalty for oil or gas made by him and that the said first party retains full control of said land in all respects and for all purposes during his lifetime, and the second party takes said land as her full share of said Elijah Kerns' real estate. Witness the following signature and seal

his<br>
"ELIJAH X KERNS.        [Seal.]"<br>
mark

Elijah Kerns, by deed dated 18th November, 1893, in consideration of two thousand four hundred dollars, sold, granted, and conveyed by deed of general warranty, to F. W. Bartlett, II. P. Brand, and another the undivided one-sixteenth part of all oil and gas in and under said tract of land of seventy five acres. This one-sixteenth of the oil which the South Penn Oil Company has produced, and is now producing, and putting in the pipe line, is the matter now in controversy. The plaintiffs, O. N. Koen and others

claim it by virtue and effect of the deeds from Kerns to his children. F. W. Bartlett and H. P. Brand claim it by virtue of the above deed from Kerns, the life-tenant, by reservation. Koen claims it as having passed to the children as owners in fee in expectancy by such deeds. Koen filed his bill to prohibit the pipe line from delivering it or its proceeds to Bartlett. Bartlett answered, setting up his title as the owner. The intermediate court, by decree of 3d of March, 1894, put it in the hands of a receiver to sell, and hold the proceeds for the one who should be held to be entitled. The intermediate court, by decree of 26th of May, 1894, held that Bartlett and Brand were not entitled to the said one-sixteenth of said oil in the pipe lines, but that plaintiffs, O. N. Koen and others, were entitled thereto, and decreed accordingly. On appeal to the circuit court by decree of December 4, 1894, the decree of the intermediate court was affirmed, and Bartlett and Brand appealed. The point in dispute turns on the legal effect of the deeds from Kerns to his children.

It is conceded on both sides that Elijah Kerns gave a right to mine for oil and gas; and that the South Penn Oil Company has produced, and is producing it *lawfully*, and placing it in the pipe line, as profits produced and issuing from the mines of the freehold, not open in fact until the —— day of ——, 1893, after the conveyance to the children. It is conceded on both sides that, by these deeds to his children, Kerns reduced himself to a tenant of a conventional life estate, seised of the present freehold estate in possession, subject to the oil lease; while his children became the owners in fee in expectancy, vested in right of present ownership, but not having the right of present possession and enjoyment. See *Hurst* v. *Hurst*, 7 W. Va. 289, 339. Whether it is with or without impeachment for waste is, in the view here taken, immaterial. That a fee may well be granted with reservation of the usufruct for life, see *Cribb* v. *Rodgers*, 12 S. C. 564; *Waugh's Ex'rs* v. *Waugh*, 84 Pa. St. 350; *Doe* v. *Brady*, 2 Dev. 395; *Hatch* v. *Thompson*, 3 Dev. 411; *Hodges* v. *Spicer*, 79 N. C. 223. Bearing on the question involved, we have, among others, the cases of *Findlay* v. *Smith* (1818) 6 Munf. 143; *Crouch* v.

*Puryear* (1822) 1 Rand. 258; *Macauley's Ex'rs* v. *Land Co.*, (1843) 2 Rob. (Va.) 507, 525; and *Williamson* v. *Jones* (1894) 39 W. Va. 231 (19 S. E. 436). Upon the strength of these cases, it is conceded by both parties that mines of oil and gas in place are land, and, as such, go with the inheritance; and it must be conceded that the life tenant is vested with the ownership thereof as land, as being seised of the immediate freehold in his possession, which possession extends from top to bottom, to the subsurface as much as to the surface—in other words, to the land as a whole—for the tenant for life has a freehold, as well as a tenant in fee (Co. Litt. 43b; 4 Com. Dig. 62); and that the owners of the inheritance have no more right to approach by a tunnel, and break and enter his subsuperficial close, than they have to break and enter his close on the surface. Their estate of inheritance is vested in right of interest, but not in right of enjoyment. Their estate is expectant on the determination of the life estate. It is the duty of the life tenant to spare and preserve the *corpus* of the inheritance, and of the owners of the fee in expectancy to wait, for they have no present right of use and enjoyment, and can not exercise any right by anticipation; and their respective duties point out their respective rights. It is further conceded, on the strength of these cases and of the books generally, that if these mines of oil and gas had been open when Kerns, by cutting down his fee, came in as tenant for life of the immediate freehold, then he would have a right to work them during the continuance of his estate, and take the issues and profits thence produced; for these two are derivative parts of one estate; each, in quantity of ownership and order of enjoyment, is measured and determined by time; and though both are vested in right, the life tenant has the hither segment—the 'immediate freehold—and therefore the sole right to hold, use, and enjoy. And, if the mine is "open" when he comes in, then we conclude that the one who had the right to say has, by his actions, which speak louder than words, manifested his intention that it may be worked. Hence the life tenant may lawfully mine, sever, and convert the mineral from land into personalty; and this is something in which the owner of the expectant estate of

inheritance has no right. He has a vested right in it as land—nothing more—and if the severance is *unlawful*, may sue at law, enjoin in equity, and have an account. *University* v. *Tucker*, 31 W. Va. 621 (8 S. E. 410). But when, by lawful severance, it ceases to be land, his right ceases, and the owner of the immediate freehold takes the issues and profits; for, under the law, he has a right to the full enjoyment and use of the land and all its profits during his estate therein. 2 Bl. Comm. 122; *Williams* v. *Pearson*, (1862) 38 Ala. 299, 309; *Crouch* v. *Puryear*, 1 Rand. 258; 1 Inst. 54b; Williams, Real Prop. (17th Ed.) 127; Crabb, Real Prop. § 100; Tied. Real Prop. §§ 2, 75; Kerr, Real Prop. § 682; *Jackson* v. *Van Hoesen*, 1 Shars. & B. Lead. Cas. Real Prop. 191, 206; McSwinney, Mines, pp. 46, 47; 2 Minor, Inst. 602; Eley's Appeal (1883) 103 Pa. St. 307. The rule is well settled that a tenant for life, when not precluded by restraining words, may not only work open mines, but may work them to exhaustion; and it is settled law that the rents of an open mine are income and go to the tenant for life. Rankin's Appeal (Pa. Sup.) 16 Atl. 82. Lawfulness of severance and conversion into personalty seem to be the reason of the doctrine of the life tenant's right to the rents and profits produced from open mines. A mine lawfully leased to be opened is an "open mine", within the reason of the rule as laid down in these cases; and when lawfully opened and worked, as in this case, during the time that the freehold estate of the life tenant continues, the profits issuing therefrom, thus lawfully severed and produced, belong of right to him; for the term "profit" in law, comprehends the produce of the soil, whether it arise above or below the surface, including product of mines, as well as the herbage growing on the surface.

In the latter part of the clause of general warranty the grantor, Elijah Kerns, in the deeds to his children, makes an exception requiring the grantee to take subject to the lease for oil and gas and his sale of royalty; and it is said that inasmuch as the grantor stops there, not excepting the unsold part of the royalty, therefore he meant it to go with the estate in fee in expectancy, granted to his children. But the answer is, that was the place to except what he had parted

with, and what he reserved and retained found its proper place in the clause of reservation, retaining a life estate, and this oil lawfully severed as an incident thereof.

This, in my view, decides the case in favor of Bartlett and Brand, and requires the two decrees they complain of to be reversed, for they are the grantees of the life tenant, and as to the one sixteenth of the oil, have succeeded by purchase to his rights.