**Calvin N. CLYDE, Jr., Administrator, Petitioner,**

v.

**Rayburn M. HAMILTON et al., Respondents.**

**No. A–11713.**

Supreme Court of Texas.

March 29, 1967.

On Rehearing April 26, 1967.

Fred V. Meredith, Terrell, for petitioner.

Robert M. Kennedy and G. H. Kelsoe, Jr., Dallas, Harrington & Harrington, H. M. Harrington, Jr., Longview, for respondents.

GREENHILL, Justice.

This case requires a decision as to the respective rights of a life tenant and the remaindermen in the proceeds from three oil and gas leases under the will of Mrs. Ava Elizabeth Cobb Cain. It also involves the construction of two agreements between the life tenant and the remaindermen in which they attempted to settle at least a part of their problems. The area upon which they did not reach agreement, as we view the record, is that dealing with royalties and bonuses on oil wells opened before and after the death of the testatrix, Mrs. Cain, and the vesting of the life estate in her husband, Mr. W. W. Cain. The will itself did not make provision for the distribution or impounding of the royalties and bonus, and hence we are called upon to allocate a part of them under the "open mine" doctrine.

Mr. Cain, the life tenant, died in 1961, and this suit was brought in 1962 by Rayburn Hamilton, a remainderman, against Calvin Clyde, Jr., the administrator of the estate of W. W. Cain. Other remaindermen joined Hamilton in the suit, and there

was a question between them as to their taking *per stirpes* or *per capita* under the will. That question was not brought here.

■ The trial court, sitting without a jury, entered a judgment for Mr. Clyde, the administrator, holding that W. W. Cain, the life tenant, was entitled to all the bonus and royalties from the three wells or leases in question. The Court of Civil Appeals sitting at Waco reversed that judgment; and as applicable to the questions before us, rendered judgment awarding the remaindermen all of the bonus and royalties from those wells. 405 S.W.2d 850 (1966). That court incorrectly considered that all the wells or leases were "opened" after the death of Mrs. Cain and the vesting of Mr. Cain's life estate. We are of the opinion that the result of the holding of the Court of Civil Appeals was correct to the extent that it held the remaindermen were entitled to the royalties and bonus on the two wells or leases opened *after* the death of the testatrix, but it was wrong in its holding as to the well or lease opened before the death of the testatrix.[1] Accordingly, we reverse the judgment of the Court of Civil Appeals and remand the cause to the district court for an accounting and the entry of a judgment.

The first contention of the administrator of Cain's estate is that Cain was entitled to all the royalties and bonus on all three of the wells or leases in question because of agreements made between himself and the remaindermen after the death of the testatrix, Mrs. Cain.

The holographic will of Mrs. Cain appointed her husband independent executor without bond. The remaining portion is very brief. It states:

"I hereby give & bequeath to my husband for his lifetime all property of every kind wherever situated. Inherited property shall remain intact & revert back to my heirs as designated unless circumstances of need necessitate otherwise."

The will did not define "inherited property" which should be kept intact and revert to her heirs.[2] Mrs. Cain's estate consisted of community and separate property. We are concerned only with three wells or leases on that portion of her separate property which was an undivided one-fourth interest in the estate of her deceased father, H. S. Cobb.

In December of 1945, after Mrs. Cain's death but before her will had been probated, the remaindermen beneficiaries and Mr. Cain entered into a written agreement construing the will of Mrs. Cain and attempting to eliminate any ambiguity in its interpretation. The agreement stated that it was the mutual desire of Cain and the remaindermen to vest in Cain the full title to all of the community property of Cain and his wife and to all of her separate property "save and except" her interest in the H. S. Cobb estate. The beneficiaries thereupon conveyed to Cain all their undivided interest as remaindermen under Mrs. Cain's will in (1) the community property of Mrs. Cain and W. W. Cain and (2) the

1. It is not clear from the record exactly how many wells there were. The parties refer to *leases* by name rather than to particular wells; and the accounting figures are by *leases* rather than wells. We do not have before us any questions as to whether particular lands were *leased* for oil and gas before and after or whether some wells were brought in *after* the death of Mrs. Cain on lands *leased* before her death. See Youngman v. Shular, 155 Tex. 437, 288 S.W.2d 495 (1956).

2. No point or argument is presented that the testatrix by providing that her inherited property should "remain intact," intended that all royalties should be impounded for the remaindermen, thus making the open mine doctrine not applicable. See the second appeal in Mitchell v. Mitchell, 157 Tex. 346, 303 S.W.2d 352 at 354 (1957). In *Mitchell*, the will said the principal of the trust should be kept intact and be allowed to accumulate for the benefit of the remaindermen. The holding was that since the testatrix specifically provided for the impounding of the royalties for the remaindermen, the open mine doctrine, which is one of presumed intent, was not applicable.

separate property of Mrs. Cain "save and except only any interest we might have under her [Mrs. Cain's] said will as remaindermen after the life estate of W. W. Cain in her share in the estate of H. S. Cobb, dec'd."

In April of 1948, after Mrs. Cain's will had been probated, the same parties, referring to the above agreement entered into an additional agreement. It provided that by the words "inherited property," as used in the will, Mrs. Cain had intended to refer only to her undivided interest in the estate of her father, H. S. Cobb; that she intended that her husband, W. W. Cain, should have a life estate in such undivided interest; and that she intended to vest fee simple title in W. W. Cain in all of her community and separate property, except for the above-mentioned interest. Cain then made gifts of $21,000 and interests in real estate not here involved in consideration of his and his deceased wife's love and affection for the remaindermen, and in consideration of "their [the heirs] harmonious and cooperative agreements and interpretation of said will * * *." The agreements of 1945 and 1948 are more fully set out in the opinion of the Court of Civil Appeals. 405 S.W.2d 852–853.

The two agreements were drawn by an attorney. As we read them, they construed the will as giving to Cain a fee simple title to all of his wife's property, both separate and community, except for her interest in the Estate of H. S. Cobb. With regard to this undivided interest of Mrs. Cain in her father's estate, the two instruments specifically reserved the rights of the remaindermen; they clearly interpreted the will as giving Cain a life estate in such interest, with the other beneficiaries receiving the remainder.

At the beginning of the first agreement, the remaindermen stated that it was their desire to vest fee simple title in Mr. Cain in all of his wife's separate property and her one-half of all their community property, "save and except" Mrs. Cain's interest in

the estate of her father, H. S. Cobb, this interest to be held by Mr. Cain for his life and then to revert to the remaindermen. The remaindermen then conveyed to Mr. Cain all of their interest in all real property in Mrs. Cain's estate, both community and separate. Next they proceeded to "transfer, sell, assign and deliver" to Mr. Cain all of their "undivided interests and claims, by remainder or otherwise," under Mrs. Cain's will, "in and to the *personal property* of the estate" of Mrs. Cain, "consisting of," among other things, money on deposit in certain checking and savings accounts, war bonds, and *royalties*. [All emphasis herein is ours.] Continuing in the same sentence, the remaindermen stated that it was their intention to transfer and assign to Mr. Cain all of their interest, if any, in the *personal property* of Mrs. Cain's estate, "save and except only any interest we might have under her said will as remaindermen after the life estate of W. W. Cain, in her share of the estate of H. S. Cobb, dec'd."

We do not agree with the administrator that by using the term "royalties," as above indicated, in the first agreement the remaindermen waived, assigned, or conveyed their right to unaccrued royalties or bonuses on wells opened after the death of Mrs. Cain and the vesting of Mr. Cain's life estate. First, royalties in the sense that they are here involved, i. e., unaccrued royalties and the right to them, are not personal property. They are a return of corpus, and a right to future royalty payments is an interest in land. Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021 (1934). Therefore, even if we can say that the remaindermen conveyed any royalties from the Cobb estate lands to Mr. Cain, the only royalties conveyed were those that had been paid prior to Mrs. Cain's death and were personal property at the time of her death. Secondly, the saving clause ("save and except * * *") must be taken as modifying the first part of the sentence, in which the remaindermen conveyed to Mr. Cain all of their undivided interests and

claims in the personal property in Mrs. Cain's estate, and *excepting* therefrom any interest they had as remaindermen to the Cobb estate lands; therefore, the remaindermen did not convey any rights they had to royalties and bonuses from wells opened after Mrs. Cain's death and the vesting of Mr. Cain's life estate.

■ The second agreement does not refer specifically to royalties. It affirms the first agreement, and in so doing states that in the first agreement the remaindermen granted and conveyed to Mr. Cain any and all interest or claim they might have as remaindermen (or otherwise) under Mrs. Cain's will *"save and except* only the individed interest owned by decedent [Mrs. Cain] in the estate of H. S. Cobb, dec'd. * * *"* The second agreement clearly does not convey to Mr. Cain any right of the remaindermen to royalties or bonuses on mines opened after the death of Mrs. Cain and the vesting of Mr. Cain's life estate.

■ We agree with Mr. Clyde, Cain's administrator, that it was clearly the intention of the remaindermen beneficiaries "to give to Mr. Cain a life estate (in the common understanding of the term) whereby he would be entitled to everything in the nature of profits or income from the estate throughout his lifetime."

■ The administrator has an additional point, though he does not argue it, that the remaindermen are estopped to claim any royalties or bonus because they joined in executing oil and gas leases. We cannot agree. These remaindermen beneficiaries already owned other undivided interests in the Cobb estate. They had an independent right as life tenants to join in the execution of such leases. In fact it was important that they did join, and they did not estop themselves by such action. The administrator had other arguments below on laches and limitations which were not brought here.

## Open Mine Doctrine

■ The general rule of property law is that a life tenant may not dispose of the corpus of the estate. It is to be preserved for the remaindermen. At common law, the life tenant was impeachable for waste, and he could not ordinarily open a new mine without the joinder of the remaindermen. In this state, minerals are part of the land, and royalties and bonuses are part of the consideration for the sale of the land. The royalties and bonuses, therefore, are corpus which is to be preserved for the remaindermen. The life tenant, however, is entitled to the interest or income derived from the investment of the royalties and bonus. Mitchell v. Mitchell (first appeal), 151 Tex. 1, 244 S.W.2d 803 (1951); Davis v. Bond, 138 Tex. 206, 158 S.W.2d 297 (1942); Swayne v. Lone Acre Oil Co., 98 Tex. 597, 86 S.W. 740, 69 L.R.A. 986 (1905); Woodward, The Open Mine Doctrine in Oil and Gas Cases, 35 Texas L.Rev. 538 (1957).

■ An exception to the rule that the life tenant is entitled to nothing but interest on the royalties and bonus is found in the "open mine" doctrine. At common law, if mines or pits were open at the time the life estate began, it was not waste for the life tenant to continue digging for his own use; and the proceeds were regarded as a profit from the land. When the settlor of a trust or a testator had opened the mine, and he gave no directions as to the impounding or expenditure of the proceeds from the mine, the law presumed an intent that the life tenant could expend or dispose of them as the settlor or testator could. So the proceeds did not become part of the corpus to be preserved for the remaindermen. Royalties and bonus, under these circumstances, belong to the life tenant. Youngman v. Shular, 155 Tex. 437, 288 S.W. 2d 495 (1956); Woodward, The Open Mine Doctrine in Oil and Gas Cases, supra; Guittard, Rights of a Life Tenant in Production and Use of Oil and Gas, 4 Texas

Bar Journal 265 (1941); Annotation, 18 A.L.R.2d 98 (1951).

The opinion of the Court of Civil Appeals in this case recognized these principles, but, as stated, it treated all of the royalties and bonus as if they came from wells opened after the death of the testatrix and the vesting of her husband's life estate. It awarded all of the royalties to the remaindermen, apparently upon the mistaken belief that all the "mines" (wells or leases) had been opened after the death of the testatrix. As we read the record, the undisputed evidence shows that at least one of the wells (leases) in question was producing when Mrs. Cain died.

The Court of Civil Appeals awarded the remaindermen beneficiaries $18,920.52 in royalties and $1,875 in bonuses. As stated previously, we are concerned with but three leases. One lease was of a tract known as the Renoveze Survey, in Wood County. This lease was executed for a bonus of $7,500 after Mrs. Cain's death and after the time of the vesting of Cain's life estate; and it is clear that the remaindermen beneficiaries are entitled to Mrs. Cain's one-fourth interest in such bonus, amounting to $1,875. There apparently are no royalties from this lease.

Of the two remaining leases, one was executed to the Rudco Oil Company, and it will be referred to as the Rudco lease. Lewis and Mucher obtained the third lease, and it is referred to as the L & M lease. The amounts paid to Cain as royalties on these two leases and the identity of the payors must be ascertained from the testimony of Rayburn M. Hamilton and two ledger books in which Cain kept meticulously complete, though very confusing, records of the royalty payments he received on these two leases as well as others.

The Rudco lease on the "Hawkins lot," apparently in the Hawkins Field, was executed in 1941 before Mrs. Cain's death and the vesting of Cain's life estate. Humble Oil & Refining Company drilled a producing well on this lease and began paying royalties thereon. Sometime in 1946, R. Lacy, Inc., began purchasing the oil from this well and paying the royalties on such production.

The L & M lease on the "railroad right-of-way tract" in the Hawkins Field was executed sometime after Mrs. Cain's death and the vesting of W. W. Cain's life estate. Lewis and Mucher paid royalties on the production from this lease until 1956, when it appears that R. Lacy, Inc., purchased the production from the lease and began paying the royalties.

In determining the amount of royalties collected by Cain to which the remaindermen beneficiaries are entitled, the Court of Civil Appeals added those royalties paid by the Lacy company on the Rudco lease (approximately $10,000) to those paid by Lewis and Mucher and the Lacy company on the L & M lease (approximately $9,000). Thus the Court of Civil Appeals erroneously awarded the remaindermen beneficiaries almost $10,000 in royalties, for production from a lease (Rudco) executed before Mrs. Cain's death and the vesting of Cain's life estate, to which Cain was entitled under the "open mine" doctrine.

The remaindermen contend, however, that under Rule 419, Texas Rules of Civil Procedure, Mr. Clyde, the administrator of the estate of the life tenant, Cain, is precluded from attacking the correctness of the amount of royalties awarded to them. Rule 419 provides: "Any statement made by appellant in his original brief as to the facts or the record may be accepted by the court [of Civil Appeals] as correct unless challenged by opposing party." The remaindermen say they asserted in their appellants' brief that they were entitled to approximately $18,900 of royalties and $1,875 of bonus, and that the appellee (the administrator, Clyde) did not challenge the figure. The appellee said in his brief that the beneficiaries were not entitled to *any* bonus or royalty. This was a challenge

of appellants' statement. It would have been helpful to the court if the appellee had stated that in any event, the appellants were only entitled to a lesser amount than the figure claimed. He did so on motion for rehearing in the Court of Civil Appeals, where he there pointed out why the amount awarded was not correct. Rule 419 merely says that the Court of Civil Appeals "may" accept any statement made by the appellant in his brief as correct unless it is challenged by the appellee; and the motion for rehearing afforded that court an opportunity to correct its error.

The state of the record before this Court is not such that we can render a judgment for particular amounts to the respective parties. That can best be done in the trial court. Accordingly, the judgment of the Court of Civil Appeals is reversed and the cause is remanded to the district court with instructions to determine the amounts due the estate of the life tenant and the remaindermen, and for the entry of a judgment based thereon.

## ON MOTION FOR REHEARING

Our original opinion in the above cause set out the respective rights of the parties but concluded by stating that we could not render a judgment in this Court because of the state of the record. The cause was remanded to the trial court for an accounting. Thereafter the parties reconciled their differences in the light of the opinion. In accordance with the agreement of the parties, judgment is here rendered that Respondents Rayburn Hamilton et al. do have and recover from the Petitioner, Calvin N. Clyde, Jr., Administrator, the following sums: $9,002.35 for royalties paid the life tenant from the lease executed and drilled after the vesting of the life estate; $1,875.00 paid the life tenant as bonus for the execution of an oil and gas lease after the life tenancy began; and $2,093.85 interest, a total of $12,971.20. It is further ordered that the costs be retaxed; and, pursuant to the agreement of the parties, it is ordered that all costs in all courts are taxed against the Petitioner Clyde, and that Respondents do have and recover of and from the Petitioner their costs in all courts.