**Sue Whatley BERGENDAHL, Appellant,**

v.

**BLANCO OIL COMPANY et al., Appellees.**

No. 4282.

Court of Civil Appeals of Texas.

Eastland.

March 7, 1969.

Rehearing Denied April 4, 1969.

Walter Clemons, Houston, for appellant.

J. Burleson Smith, San Antonio, W. B. Browder, Jr., Midland, George K. Gilbert, Bartlesville, Okl., Legal Dept., Cities Service Oil Co., Wallace G. Malone, Houston, for appellees.

WALTER, Justice.

Sue Whatley Bergendahl, as life tenant, filed suit against the remaindermen, Dan E. Whatley and others, hereinafter referred to as the Whatley heirs, seeking to establish that she was the owner of a life estate in $\frac{1}{16}$th of the mineral estate in 9 tracts of land located in Borden and Dawson Counties, and that her interest was subject to the application of the "open mine doctrine." She also sued Blanco Oil Company, Texaco and Cities Service for an accounting for the value of the oil produced by Blanco and sold to Texaco and Cities Service and for interest thereon from the date of production.

All matters relating to the tender and payment into the registry of the court of

the proceeds of the sale of royalty oil and gas involved were severed out of this cause.

In a non-jury trial, the court concluded that the plaintiff's life estate in ⅟₁₆th interest of the mineral estate was not subject to the application of the "open mine doctrine" and decreed that she recover nothing against the defendants. She has appealed.

She claims the court erred in holding that her mineral estate was a closed rather than an open mine. The parties entered into the following stipulation:

"(1) Plaintiff is the owner of a life estate in ⅟₁₆th of the mineral estate in the tracts of land covered by the oil, gas and mineral leases described in the pleadings; and

(2) Title to the leasehold estates under said leases is not an issue in this case and said leases have continued in full force and effect from and after the expiration of the primary terms of each by reason of the production of oil and gas in commercial quantities; and

(3) Each of the Defendant companies has paid into the registry of the Court all of the proceeds from the sale of oil and gas produced from the lands described in the pleadings attributable to the ⅟₁₆th mineral interest in which Plaintiff owns a life estate, and no claim is made by plaintiff that any of the Defendant companies either as an operator under said leases or as a purchaser of production therefrom failed to account for and pay into the registry of the Court any of the proceeds from the sale of such oil and gas, or either of them;

provided, however, that such stipulations are made without prejudice to Plaintiff's claim against the Defendant companies for a 6% return or for interest on the proceeds from production paid into the registry of the Court accrued thereon to the time of such payment and, further, are made without prejudice to Plaintiff's claim that the mineral interest in which she owns

a life estate was and is an 'open mine' under Texas Law."

Mrs. Bergendahl, as lessor, executed three oil and gas and mineral leases to Blanco Oil Company on nine tracts of land in Borden and Dawson Counties, one on November 19, 1954, one on January 12, 1955 and one on May 31, 1955. The Whatley heirs also executed leases to Blanco on the same land. She contends that on the dates each of said leases was executed her mineral estate was an "open mine" and she is entitled to the entire royalty attributable to her ⅟₁₆th interest.

Dan T. Whatley, deceased, is the common source of title of the Whatley heirs and Mrs. Bergendahl. He purchased a 12,300 acre ranch in Borden and Dawson Counties on May 25, 1929. He conveyed the ranch to Charles C. Canon on September 30, 1939 and excepted from such conveyance an undivided ½ interest in and to all the oil and gas and other minerals. At the time of such conveyance Mr. Whatley was married to Elizabeth Spencer Whatley. Mr. Whatley and his first wife were divorced.

In the partition of their community property each took a ¼th mineral interest in the ranch. Mr. Whatley married appellant in 1942 and died intestate on July 6, 1946. Appellant inherited a life estate in ⅓rd of the separate property of her deceased husband. After conveying an undivided ¼th of her ⅟₁₂th interest to a Mr. Chernosky, all parties agree that appellant is the owner of a life estate in ⅟₁₆th of the mineral estate in the land covered by said oil and gas leases.

Appellant relies on Youngman v. Shular, 155 Tex. 437, 288 S.W.2d 495 (1956), in which the court said:

"The only question to be decided is whether the execution of the oil and gas lease during the lifetime of Rem B. Love requires the court to apply the 'open mine' doctrine and award to the surviving widow, whose claim thereto arises

out of homestead right, the royalty from wells drilled after her husband's death, or whether such royalty will be preserved for the remaindermen, the widow being awarded only interest thereon.

The trial court applied the 'open mine' doctrine and awarded the royalties to the widow. That judgment was affirmed by the Court of Civil Appeals. 281 S.W.2d 373.

In its opinion the Court of Civil Appeals correctly pointed out that the question was one of first impression in this state and that decisions from other jurisdictions in which the question had been considered were unanimous in applying the 'open mine' doctrine in this and analogous fact situations. We have reviewed the decisions on the question, many of which are cited in the opinion of the Court of Civil Appeals, and have concluded that they are sound and should be followed by this Court. For example see Koen v. Bartlett, 41 W.Va. 559, 23 S.E. 664, 31 L.R.A. 128; Andrews v. Andrews, 31 Ind.App. 189, 67 N.E. 461; Lawley v. Richardson, 101 Okl. 40, 223 P. 156, 43 A.L.R. 803; Warren v. Martin, 168 Ark. 682, 272 S.W. 367, and 'Rights of a Life Tenant' by Clarence A. Guittard, Vol. 4, Texas Bar Journal, 265 (June 1941 issue) where the reasons for the holding may be found. They need not be repeated here."

She also relies on Clyde v. Hamilton, 414 S.W.2d 434 (Sup.Ct.1967), in which the court said:

"The general rule of property law is that a life tenant may not dispose of the corpus of the estate. It is to be preserved for the remaindermen. At common law, the life tenant was impeachable for waste, and he could not ordinarily open a new mine without the joinder of the remaindermen. In this state, minerals are part of the land, and royalties and bonuses are part of the consideration for the sale of the land. The royalties and bonuses, therefore, are

corpus which is to be preserved for the remaindermen. The life tenant, however, is entitled to the interest or income derived from the investment of the royalties and bonus. Mitchell v. Mitchell (first appeal), 151 Tex. 1, 244 S.W.2d 803 (1951); Davis v. Bond, 138 Tex. 206, 158 S.W.2d 297 (1942); Swayne v. Lone Acre Oil Co., 98 Tex. 597, 86 S.W. 740, 69 L.R.A. 986 (1905); Woodward, The Open Mine Doctrine in Oil and Gas Cases, 35 Texas L.Rev. 538 (1957).

An exception to the rule that the life tenant is entitled to nothing but interest on the royalties and bonus is found in the 'open mine' doctrine. At common law, if mines or pits were open at the time the life estate began, it was not waste for the life tenant to continue digging for his own use; and the proceeds were regarded as a profit from the land. When the settlor of a trust or a testator had opened the mine, and he gave no directions as to the impounding or expenditure of the proceeds from the mine, the law presumed an intent that the life tenant could expend or dispose of them as the settlor or testator could. So the proceeds did not become part of the corpus to be preserved for the remaindermen. Royalties and bonus, under these circumstances, belong to the life tenant."

The leases to Blanco were executed after Mr. Whatley's death and the first production was in 1955. Prior to his death Mr. Whatley executed a shooting option to Gulf Oil Corporation on the entire ranch. Pursuant to the terms of the option he, while married to the appellant, executed an oil and gas lease to Gulf on October 2, 1943. This lease to Gulf included 5,300 acres of the Canon Ranch, but did not include any of the land involved in the Blanco leases. Gulf obtained production on October 23, 1953, and appellant has been receiving all the royalty attributable to her 1/16th interest produced under the Gulf leases.

The Whatley heirs have made no claim to such royalty.

The only property involved is a mineral estate. Appellant says that Mr. Whatley intended the mineral estate to be an open mine because in his deed to Canon in which he reserved his mineral interest, it recites that the conveyance is made subject to oil and gas leases as may appear of record. She contends that the fact that Whatley purchased the ranch as one tract of land and sold it as one tract and reserved minerals under one tract if some evidence that he intended for his mineral interest to be subject to the open mine doctrine.

The record also shows that in 1936 Whatley executed an oil and gas lease on some of the land involved and it was stipulated that it expired without production. Also he executed an oil and gas lease in 1941 to Standard Oil Company on some of the land involved which was released in 1942.

All parties have cited the two Supreme Court cases and the cases referred to therein in support of their points. Our problem is to apply the doctrines announced by these cases to the facts of this case.

There is some evidence that Mr. Whatley devoted his mineral estate to mining purposes. He executed two leases on some of the property involved which expired without production before his death. The only estate involved is a mineral estate reserved by him when he sold the ranch to Canon which was made subject to oil and gas leases of record. Appellant takes the position that these facts, and the Gulf leases and production on lands not involved in this appeal conclusively establish that Whatley devoted his mineral estate in the land for the production of oil and gas and therefore such mineral estate is subject to the application of the "open mine doctrine" and she is therefore entitled to recover all the royalty applicable to her interest during her lifetime.

■ The Youngman v. Shular, 155 Tex. 437, 288 S.W.2d 495 (1956) and Clyde v. Hamilton, 414 S.W.2d 434 (Sup.Ct.1967), cases support the application of the "open mine doctrine" in favor of appellant to the minerals involved in the Gulf leases. We are of the opinion, however, that these cases will not support the conclusion that the entire mineral estate owned by Whatley under the 12,300 acre ranch was subject to the open mine doctrine at the time of his death.

■ Appellant in one of her points says that the judgment provides that she is not entitled to the income from royalty accruing to her mineral estate and the court erred in so holding. The judgment does recite that "the plaintiff do have and recover nothing against the defendants or any of them." It also recites that she is "the owner of a life estate in $\frac{1}{16}$th of the mineral estate in the tracts of land covered by the oil, gas and mineral leases described in the pleadings." We hold that the judgment means that the appellant is "the owner of a life estate in $\frac{1}{16}$th of the mineral estate in the tracts of land covered by the oil, gas and mineral leases described in the pleadings." If the judgment does not mean that, then, based upon the record, it is reformed and we hold that appellant has not been deprived of her estate for life in $\frac{1}{16}$th of the mineral estate in said tracts of land.

In the alternative appellant pleaded that if the open mine doctrine did not apply then the closed mine doctrine did and she was entitled to recover interest from Blanco, Cities Service and Texaco on the impounded funds.

The Supreme Court in Clyde v. Hamilton, 414 S.W.2d 434 (1967), said:

"The royalties and bonuses, therefore, are corpus which is to be preserved for the remaindermen. The life tenant, however, is entitled to the interest or income derived from the investment of the royalties and bonus."

Appellant says "someone owes the appellant and the remaindermen Whatley Heirs interest on the funds belonging to them." She also says:

"Much is written in Appellees' brief about the fact that Appellant made no demand for payment of funds held in suspense. True it is that the record does not reflect any registered letter to any of the Appellees demanding immediate payment of funds to Appellant. The record, however, is replete with evidence that Mrs. Bergendahl talked repeatedly with all the Appellees. The record is full of correspondence by the Whatley Heirs that Mrs. Bergendahl would not accept the terms dictated by the Whatley Heirs. The record shows the terms of settlement made between the Whatley Heirs and the Chernosky Heirs. The record is clear that Mrs. Bergendahl was claiming *more* than the Chernoskys accepted in their settlement. With all this background no one of Appellees did anything toward depositing the money into Court by an interpleader suit."

The leases executed by Mrs. Bergendahl to Blanco contained the following provision:

"Since the Lessor herein owns only a life estate in an undivided interest in said land, the production payment and royalties herein provided shall be paid only in the amount attributable to said life estate and Lessor shall receive said payments and royalties or interest thereon in accordance with the legal rights of life tenants to share in production of oil, gas and other minerals from said land."

They also contained a warranty of title and a provision that if the lessor's interest was less than the entire fee simple estate, then her royalties would be reduced proportionately. Appellant's exhibit 39 shows that she notified the attorney for the Whatley Heirs that she was claiming under the open mine doctrine. However, there is nothing in the record to show that the oil companies were ever informed that she was claiming under such doctrine.

 We hold that the oil companies were not obligated to invest such funds. No proper demand was ever made on them before suit was filed. The remaindermen, who are entitled to the corpus, have made no demand for the funds held in suspense. The relationship of debtor and creditor does not exist, and for all these reasons, the appellant is not entitled to recover interest. All matters relating to tender and payment into the registry of the court of the proceeds of the sale of royalty oil and gas have been severed and retained in the trial court. Income from the investment of royalties and accounting procedures incident thereto are issues which were severed.

We have considered all of appellant's points and find no merit in them. They are overruled.

The judgment is affirmed.