**ENSERCH EXPLORATION, INC., Appellant,**

v.

**Shirla Ann WIMMER, et al., Appellees.**

**No. 07–85–0137–CV.**

Court of Appeals of Texas, Amarillo.

June 5, 1986.

Rehearing Denied June 24, 1986.

Eric D. Archer, Dallas, Gibson, Ochsner & Adkins, S. Tom Morris, Amarillo, for appellant.

Dan Mike Bird, Quanah, Heatly & Capps, Gene Heatly, Vernon, for appellees.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

Appellant Enserch Exploration, Inc. brings this appeal from a judgment in favor of appellees Shirla Ann Wimmer, Robert Michael Nichols, and Charles Wendell Nichols, and intervenor Foy E. Nichols rendered after a bench trial. This suit was brought by appellees, remaindermen under a deed in favor of their deceased father C.W. Nichols, asserting that appellant improperly paid oil and gas royalties to a life tenant under the deed, their grandmother. Foy E. Nichols (intervenor), also a remainderman under a similar deed in his favor, intervened in the suit. In his intervention he made like allegations. We reverse the judgment of the trial court and render judgment in favor of appellant.

The material facts in the suit are undisputed. R.G. Nichols and his wife Naomi G. Nichols owned the east one-half of Section 97, Block H, W & NW RR Co. Survey, Hardeman County, Texas. On December 3, 1969, Mr. and Mrs. Nichols executed warranty deeds conveying the west one-half of their tract to their son, C.W. Nichols, and the east one-half of the tract to their son, F.E. (Foy) Nichols. Each deed, in identical language, contains the following reservation:

> HOWEVER, the Grantors herein, the said R.G. Nichols and wife, Naomi Nichols, hereby reserve, and it is expressly agreed that they shall have, for themselves and their assigns, the full, complete and absolute possession, benefit and use of the above described premises, as well as all of the rents, issues, revenues and profits thereof, for and during their natural lives, and at the death of the survivor of said Grantors herein, this conveyance shall become absolute.

R.G. Nichols died on August 22, 1971 and, thereafter, on December 14, 1973, Naomi G. Nichols, Foy E. Nichols, and Claren (C.W.) Nichols executed an oil, gas and mineral lease, with a five-year primary term, covering the entire half section of land in favor of Charles Million. The record does not show who received the bonus paid for the execution of the deed or who actually received any delay rentals paid under the lease. By mesne assignments, the lease was assigned to appellant.

Claren W. Nichols died intestate on November 22, 1976, leaving as his only heirs appellees Shirla Ann Wimmer, Robert Michael Nichols, and Charles Wendell Nichols. On October 21, 1978, Naomi G. Nichols and appellees executed a royalty deed conveying an undivided 1/16 royalty interest in and to the west half of the southeast quarter of Section 97 to Jack D. Hightower. On the same day, Naomi G. Nichols and Foy E. Nichols executed an identical royalty deed in favor of the same grantee

covering the east half of the southeast quarter of the section.

Appellant created a Wells-Nichols 40-acre unit on November 9, 1978 by unitizing twenty acres of the Nichols' land with 20 acres of other land. That unit was cancelled and, by combining 40 acres of the Nichols' land with 40 acres of other land, an 80-acre unit established as of May 10, 1979. The exact acreage included in the unit from each of the two halves of the east one-half is not clearly shown, but any ambiquity is not material to this suit since the parties stipulated as to the division of the amounts in controversy. A well was drilled on the 40-acre tract in the latter part of 1978 and commenced production in January 1979, requiring payment of the royalties here in controversy.

Naomi Nichols executed a division order dated January 29, 1979, certifying her royalty interest as ½ of 20/40 of ⅛. Thereafter Enserch paid all of the Nichols' royalties to Naomi, without objection on the part of appellees or intervenor, until Naomi's death on October 21, 1982. Subsequent to Naomi's death, demand was made by appellees and intervenor upon appellant for payment of the accrued royalties and, that payment not forthcoming, this suit resulted. At trial, it was stipulated that the amount of royalties paid prior to Naomi's death was $274,684.02. That portion stipulated as not barred by the four year statute of limitation was $270,820.03. In its judgment, the trial court awarded to appellees $135,410.01 together with attorney's fees of $20,311.50 and awarded to intervenor $127,961.17 and attorney's fees of $19,194.18. Hence, this appeal.

In attacking the trial court's judgment, appellant raises three points of error. However, since it is dispositive of the appeal, we will discuss only its first point. In that point, appellant argues that the court erred in entering judgment for appellees and the intervenor because the record conclusively shows that the royalties were properly paid by it and there is no evidence or, alternatively, insufficient evidence to show improper payment or negligence on its part.

Appellees and intervenor correctly point out that, this being a bench trial with no findings of fact requested or filed, all questions of fact are presumed found in support of the judgment and the judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Lassiter v. Bliss,* 559 S.W.2d 353, 358 (Tex. 1977); *Owens v. Travelers Ins. Co.,* 607 S.W.2d 634, 637 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). However, our disposition of the case is mandated by the terms of the reservations in the Nichols' deeds and the legal rights arising therefrom.

The dominant purpose in construing a deed is to ascertain the intention of the parties as expressed in the deed itself. In the determination of that intent, every part of the instrument should be harmonized and given effect to, if possible, and where the intent of the grantor and grantee are clearly disclosed by the provisions of the deed, free from ambiquity, no resort to extrinsic evidence is permissible to ascertain that intent. *Finley v. Carr,* 273 S.W.2d 439, 442–43 (Tex.Civ.App.—Waco 1954, writ ref'd). It is in the light of this teaching that we examine the reservations here in question.

While the parties differ as to the exact extent of the estate reserved to Naomi Nichols in the deeds, they all agree that it was, at the very least, an ordinary life estate. There are certain well-established rules concerning the property rights of a life tenant vis-a-vis the remaindermen. A life tenant is entitled to exclusive possession and control of the property comprising the life estate and the remaindermen are not entitled to possession thereof until the life estate terminates. *Moore v. Reed,* 668 S.W.2d 847, 849 (Tex.App.—El Paso 1984, writ ref'd n.r.e.); *Collins v. New,* 558 S.W.2d 108, 112 (Tex.Civ.App.—Corpus Christi 1977, no writ). Such a life tenant, in the absence of restrictions or limitations in the instrument creating the life estate, is entitled to everything in the nature of reve-

nue or income produced by the property during such a tenancy. *Hobson v. Shelton,* 302 S.W.2d 268, 272 (Tex.Civ.App.—Waco 1957, writ ref'd n.r.e.); *Bailey v. Bailey,* 212 S.W.2d 189, 191 (Tex.Civ.App.—Waco 1948, writ ref'd); *Medlin v. Medlin,* 203 S.W.2d 635, 640 (Tex.Civ.App.—Amarillo 1947, writ ref'd). Indeed, in words similar to those used in the instant reservations, that entitlement has been expressed as the right to receive "everything in the nature of income, rents, revenues and benefits" accruing during such a life tenancy. *Murphy v. Slaton,* 154 Tex. 35, 273 S.W.2d 588, 595 (1954). However, that right to receive profits is subject to the qualification that, absent express direction in the instrument establishing the life tenancy, such a tenant may not dispose of the corpus and may not commit waste. *Blackwell v. Blackwell,* 86 Tex. 207, 24 S.W. 389, 390 (1893); *Clift v. Clift,* 72 Tex. 144, 10 S.W. 338, 340 (1888); *Hamilton v. Hamilton,* 42 S.W.2d 814, 817 (Tex.Civ.App.—Amarillo 1931, writ ref'd).

█ In Texas, minerals are part of the land and, mineral royalties and bonuses are part of the consideration for the sale of the land. Such royalties and bonuses, therefore, are considered to be corpus to be preserved for the remainderman. *Clyde v. Hamilton,* 414 S.W.2d 434, 439 (Tex.1967). However, the life tenant is entitled to the interest or income derived from the investment of the royalties and bonus. *Id.* Parenthetically, we note appellant's contention that the language of the reservations is sufficient to allow Naomi Nichols to consume the royalties. However, decision of that particular contention is not necessary to our disposition of the case and it is a holding we specifically do not make.

The posture of a life tenant was explicated by the Court in the seminal and oft-cited case of *Wagnon v. Wagnon,* 16 S.W.2d 366 (Tex.Civ.App.—Austin 1929, writ ref'd), *overruled on other grounds, Magids v. American Title Ins. Co., Miami, Fla.,* 473 S.W.2d 460, 466 (Tex.1971). In that case the Court said:

> In a sense, any life tenant holds the estate in trust for the remaindermen, but "he differs from a trustee in a pure trust in that he may use the property for his exclusive benefit and take all of the income and profits."
>
> * * * * * *
>
> It is a well-settled rule that the life tenant is entitled to everything in the nature of profits or income accruing during his tenancy, in the absence of a contrary restriction or limitation. [Citations omitted.] And, unless the personal property be perishable or consumable, or express authority given in the will to dispose of it, it is the duty of the life tenant to manage it prudently, to appropriate only the income and profits, and, where personalty is sold, to invest the proceeds in such manner as not to diminish its value as a whole. He is entitled to interest on the moneys, but not to consume the principal, unless necessary....
>
> * * * * * *
>
> [T]hough R.M. Wagnon [the life tenant] was not a trustee in a strict sense, yet his status was that of quasi trustee, and he owed the duty to his children, as beneficiaries under their mother's will, to preserve for them the corpus of the estate of which he was only a life tenant.

*Id.* at 370.

█ Application of those principles to the instant fact situation requires the conclusion that Naomi Nichols, as the life tenant, was entitled to possession of the corpus of the estate during her lifetime. Royalties being a part of that corpus, *Clyde v. Hamilton,* 414 S.W.2d at 439, it would naturally follow that she would have been entitled to possession of those royalties. Our conclusion in this regard is strengthened by the particular direction in the reservations that the grantors were, during their natural lives, entitled to "the full, complete and absolute possession, benefit and use of the above described premises, as well as all of the rents, issues, revenues and profits thereof."

Appellees and intervenor contend, however, that because of the joinder of the remaindermen in the lease as lessors, appellant became obligated to pay, and failed to pay, royalties according to the interest of the remaindermen in the lease. We disagree. All of the grantors in the lease were included under the generic term "lessor." The royalties were directed to be paid to "lessor" without direction as to method or mechanics. In the absence of contrary direction in the lease, appellant was entitled and required, in its payment of the royalties, to follow the instruction and teaching of the general legal principles we have enumerated above. Whether the remaindermen, in an action specifically brought for that purpose, and upon a showing of proper need, could have obtained a receivership or required a bond of the life tenant is a question not before us and upon which we make no holding. Neither are we presented with the question as to whether the royalties were improperly dissipated by the life tenant, and the remaindermen entitled to a recovery against the estate of the life tenant.

In asserting that appellant improperly paid the royalties to the life tenant without obtaining a court direction, a surety bond guaranteeing payment to the remaindermen, or an agreement from the remaindermen, appellees place primary emphasis upon the decisions in *Ramirez v. Flag Oil Corp. of Delaware*, 266 S.W.2d 270 (Tex. Civ.App.—San Antonio 1954, no writ) and *Bergendahl v. Blanco Oil Company*, 440 S.W.2d 81 (Tex.Civ.App.—Eastland 1969, writ ref'd n.r.e.). However, these cases are distinguishable.

*Bergendahl* was a suit instituted by the life tenant against the remaindermen and others claiming that she was entitled to ownership of oil royalties through application of the "open mine" doctrine. Pending resolution of the dispute, the royalty payments were deposited in the registry of the court. The plaintiff also asserted that she was entitled to interest from the lease producers on the proceeds placed in the registry of the court. The appellate court held that the "open mine" doctrine was not ap-

plicable and that, no demand having been made from either side to invest the funds, the companies were not liable for interest thereon. The question in this case was not before the *Bergendahl* Court nor does the case hold that, absent such a legal dispute between the life tenant and the remaindermen, deposit of the royalty proceeds into court for its direction as to disposal is required.

In *Ramirez*, a prior opinion of the appellate Court had decreed that the life tenants were entitled to the use of royalty proceeds that had been paid into court but, in order to withdraw those proceeds, it was specifically decreed that the life tenants furnish a surety bond. The question actually involved was the sufficiency of a tendered surety bond. Again, the question involved in this case was not before that Court nor does the case hold that in the absence of court direction, a producer must, prior to payment of royalties to a life tenant, require that tenant to execute a surety bond to secure payment of those royalties to the remaindermen upon the termination of the life estate.

In his brief, intervenor cites the decision in *Morriss v. First National Bank of Mission*, 249 S.W.2d 269 (Tex.Civ.App.—San Antonio 1952, writ ref'd n.r.e.). This case is also distinguishable. *Morriss* was an interpleader suit brought by the depository bank in an oil and gas lease to determine whether funds deposited with it were royalties belonging to the nonparticipating royalty owners or rents or bonus payable to the lessor who owned the executive rights. The case did not involve a life tenancy, the lessee was not a party to the suit, nor was there any contention that the lessee had improperly made any lease payments.

In summary, appellant's first point of error is sustained. That action pretermits the necessity for discussion of appellant's second and third points. The judgment of the trial court is reversed and judgment here rendered that appellees and intervenor take nothing by their suit.